## ATLANTIC COAST LINE RAILROAD COMPANY *v.* GLENN.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 91. Argued December 6, 1915.—Decided December 20, 1915.

Although the trial court may have charged the jury that there was a presumption, rebuttable by proof, that the damage occurred on the line of the delivering carrier, if the court also excluded testimony offered by defendant to show that the damage, if any, did not occur on its line on the ground that a state statute made the delivering carrier liable, the judgment does not rest on the independent state ground of defendant's negligence but rests on the validity of the statute; and if defendant properly saved the Federal question, this court has jurisdiction to review under § 237, Judicial Code.

This court having held that Congress, under its power to regulate interstate commerce, can make an initial carrier liable to the holder of a bill of lading for a through interstate shipment over its own and connecting lines, even if the loss occurred while the goods were under control of the connecting carrier, the same reasoning applies to upholding a state statute making the delivering carrier of a through intrastate shipment liable. to the consignee even if the loss occurred while the goods were under the control of another carrier. *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186.

The statute of South Carolina making the delivering carrier responsible for damage to goods on through bills of lading in intrastate shipments is not unconstitutional under the Fourteenth Amendment as depriving a delivering carrier who voluntarily received the goods from a connecting carrier of its property without due process of law.

The statute of South Carolina having been construed by the courts of that State as not requiring a carrier to accept intrastate shipments on through bills from connecting carriers, this court does not in this case determine the liability of a carrier receiving from a connecting carrier goods in a damaged condition or the constitutionality of a state statute making such receiving carrier liable for damage in such event.

96 So. Car. 357, affirmed.

THE facts, which involve the liability of connecting carriers under a statute of South Carolina, are stated in the opinion.

*Mr. P. A. Willcox* with whom *Mr. F. L. Willcox* was on the brief, for plaintiff in error.

*Mr. Joe P. Lane, Mr. L. B. Haselden* and *Mr. Frederick S. Tyler* for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Sections 2574 and 2575 of the Civil Code of South Carolina (1912) provide in part as follows:

"All common carriers over whose transportation lines,

or parts thereof, any freight, baggage or other property received by either of such carriers for through shipment or transportation by such carriers on a contract for through carriage, recognized, acquiesced in or acted upon by such carriers, shall in this State, with respect to the undertaking and matters of such transportation, be considered and construed to be connecting lines, and be deemed and held to be the agents of each other, each the agent of the others, and all the others the agents of each, and shall be held and deemed to be under a contract with each other and with the shipper, owner and consignees of such property for the safe and speedy through transportation thereof from point of shipment to destination; and such contract as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers; . . .

"For any damages for injury, or damage to, or loss, or delay of any freight, baggage or other property sustained anywhere in such through transportation over connecting lines, or either of them, as contemplated and defined in the next preceding section of this act, either of such connecting carriers which the person or persons sustaining such damages may first elect to sue in this State therefor, shall be held liable to such person or persons, and such carrier so held liable to such person or persons shall be entitled in a proper action to recover the amount of any loss, damage or injury it may be required to pay such person or persons from the carrier through whose negligence the loss, damage or injury was sustained, together with costs of suit."

In November, 1911, these provisions being in force, Glenn, the defendant in error, through an agent delivered to the Southern Railway Company at Chester, South Carolina, a carload of cattle for through shipment to Latta, South Carolina, on the Atlantic Coast Line Railroad. The Southern Railway accepted the cattle, issued

a bill of lading for their shipment to Latta over its own
and its connecting lines, and transported them over its
own line to Columbia, South Carolina, where they were by
it delivered to and accepted by the Atlantic Coast Line
Railroad Company, by which company they were carried
under the original bill of lading to Latta and there deliv-
ered to Glenn, the consignee. There was delay in the
transit and to recover damages on account of resulting
injury to the cattle Glenn brought this suit against the
Atlantic Coast Line, alleging, conformably to the statute
above quoted, that the Southern Railway in so far as the
shipment involved was concerned, was the agent of the
defendant, and consequently asserting a right to recover
from the defendant damages resulting from the negligence
of the Southern Railway or of the defendant or both. The
defendant denied this right and sought to escape all liabil-
ity by establishing that it had promptly transported and
delivered the cattle after receiving them from the Southern
Railway, that the delay, if any, had not occurred on its
line, and that by virtue of the following provision of the
contract of shipment defendant was not responsible for
any delay occurring on the line of the Southern Rail-
way:

"That the responsibility, either as common carrier or
warehouseman, of each carrier over whose line the prop-
erty shipped hereunder shall be transported shall cease as
soon as delivery is made to the next carrier or to the con-
signee; and the liability of the said lines contracted with
is several and not joint; neither of the said carriers shall be
responsible or liable for any act, omission or negligence of
the other carriers over whose lines said property is or is
to be transported."

This defense was on motion of the plaintiff stricken by
the court from the answer on the ground that the provision
of the contract was void because in conflict with the statute
which we have quoted, and rulings to the same effect were

made during the course of the trial in excluding evidence
offered by the defendant, in refusing instructions by it
requested, and in charging the jury that the provisions
of the statute were applicable to the case and that the
defendant was liable for damage resulting from its own or
the negligence of the Southern Railway. A judgment in
favor of the plaintiff rendered on the verdict of the jury
was affirmed by the court below which held that the stat-
ute was rightly applied to the case and was not repugnant
to the due process clause of the Fourteenth Amendment
(96 So. Car. 357), and the correctness of that conclusion is
the question for decision on this writ of error.

We first dispose of a motion to dismiss. It is based on
the proposition that since the court instructed the jury
that there was a presumption, which might be rebutted,
that the damage to the cattle, if any, occurred on the line
of the delivering carrier, that is, the defendant company,
the jury might have found for the plaintiff wholly irrespec-
tive of the statute, and therefore the judgment rests upon
an independent state ground broad enough to sustain it.
But the want of foundation for the proposition is manifest
when it is considered that evidence offered by the defend-
ant which would have a tendency to show that no damage
and no delay occurred on its line and hence tended to
rebut the presumption was excluded from the considera-
tion of the jury by the ruling of the court that the statute
imposed upon the defendant the duty to respond to the
plaintiff for the negligence of the Southern Railway. The
motion is therefore denied.

Coming to the merits we are of the opinion that the case
is controlled by *Atlantic Coast Line* v. *Riverside Mills*, 219
U. S. 186. In that case the constitutionality of the act of
Congress known as the Carmack Amendment to the Act
to Regulate Commerce was considered, the question
presented being whether Congress under its power to
regulate commerce could make an initial carrier liable to

the holder of a bill of lading issued by it for a through interstate shipment of property over its own and connecting lines for a loss occurring after the property had been delivered by it to a connecting carrier and while in the control of such carrier. It was decided that the act was a valid regulation of interstate commerce and hence that no rights of the initial carrier secured by the Fifth Amendment had been violated. It is true that case involved the power of Congress over interstate, while this concerns the power of a State over intrastate, commerce, but the reasoning by which the conclusion as to the existence of the power was sustained in that case compels a like conclusion with reference to the power of a State over commerce wholly within its borders. Indeed, in argument the controlling force in a general sense of the *Riverside Case* is conceded, but it is insisted that it can here have no application because liability is imposed by the state statute upon the terminal and intermediate carriers as well as the initial or receiving carrier while in the *Riverside Case* the liability alone of the latter was under consideration. But it is obvious that this proposition challenges not the power but the wisdom of exerting it, since in the nature of things the power to constitute an initial carrier the agent of the terminal carrier is not different from the power to make the terminal carrier the agent of the initial carrier. Of course we confine ourselves to the case before us and therefore do not decide what would be the rights of the terminal carrier if against its will it had been compelled to accept the cattle from the initial carrier in a damaged condition or if they had never been delivered to it. These questions are not presented by the record since it is not contended that the acceptance of the cattle by the Atlantic Coast Line was not voluntary. In fact, it is stated in the argument of the plaintiff in error that long prior to the shipment in question the statute had been construed by the court below to permit the connecting carrier upon

accepting a shipment from an initial carrier to repudiate the original bill of lading and issue a new one. (*Venning* v. *Atlantic Coast Line*, 78 S. Car. 42.)

*Affirmed.*