10308

FAULK v. SEABOARD AIR LINE RY. CO.

(101 S. E. 641.)

CARRIERS — ACTION FOR INJURIES TO LIVE STOCK PROPERLY BROUGHT AGAINST TERMINAL CARRIER.—Where the evidence gives rise to a reasonable inference that a shipment of horses was injured while being transported by defendant railroad, the action for such injuries was properly brought, under the Federal Interstate Commerce Law, against defendant terminal instead of the initial carrier.

Before WHALEY, J., County Court, Richland, June, 1919. Reversed.

Action by J. H. Faulk against Seaboard Air Line Railway Co. From order of nonsuit, plaintiff appeals.

The plaintiff above named brought an action in the Richland County Court to recover damages of the defendant for the alleged injuries to two horses which were shipped by the plaintiff over several connecting lines of railway from East St. Louis, Mo., to himself at Clinton, S. C., which horses, the plaintiff alleges, were delivered to him by the defendant at Clinton, S. C., in a damaged condition.

The original summons and complaint were served on the defendant on the 28th day of July, 1918, but the original complaint which alleged a contract of shipment under a through bill of lading was amended by permission of the Court so as to allege that the shipment was under an implied contract. The defendant having answered the original and amended complaints, the action came on for trial upon the issue raised by pleadings before the Hon. M. S. Whaley, and a jury, at a term of the Richland County Court held on the 16th day of June, 1919; and at the close of all the evidence, the trial Judge granted a motion for a nonsuit asked for by

NOTE.—The decision in this case seems to have been overlooked by a former Reporter.        W. M. SHAND, Reporter.

the attorney for the defendant at the close of the plaintiff's evidence. In due time, the plaintiff served notice of intention to appeal to the Supreme Court from said order of nonsuit, and from any judgment entered, or to be entered thereon.

The following is the complaint:

Amended Complaint: The plaintiff above named, complaining of the defendant above named, alleges:

1. That the defendant is a railway corporation duly chartered and incorporated under the laws of one of the States of the United States of America, and as such is now and was at the times hereinafter mentioned engaged in the business of transporting freight over certain lines of railway extending through the States of Georgia and South Carolina, and through other Southern States.

2. That on or about March 30, 1918, the defendant received from the Southern Railway Company, a connecting carrier, at Atlanta, Ga., a carload of horses and mules, consisting of eighteen horses and seven mules, which the defendant had agreed to carry and safely deliver to the plaintiff at Clinton, S. C., for and in consideration of the freight charges which the plaintiff had agreed to pay, said contract between the plaintiff and the defendant being an implied contract, arising from the fact that the defendant received, as a common carrier of freight, the said horses and mules above referred to, transported the same and delivered them to the plaintiff at Clinton, S. C., without ever having entered into any expressed contract, either in writing or by parol governing or concerning the shipment of the said horses and mules.

3. That the defendant failed and refused safely to carry and deliver the said shipment of horses and mules to the

plaintiff at Clinton, S. C., but, on the contrary, so carelessly and negligently carried and handled the same that one of the horses died from the injuries she received while being carried by the defendant a short time after she was unloaded, and another of said horses was so badly injured that she could not be used or sold by the plaintiff for several months, but had to be kept, nursed and medically treated by him for several months, all of which was at great expense to the plaintiff; and the plaintiff alleges that in spite of said treatment, said horse has never recovered and will never recover from said injuries.

4. And the plaintiff alleges that by reason of the death of the one of his said horses and the injuries of the other, he has been damaged in the sum of three hundred and fifty dollars.

Wherefore, the plaintiff demands judgment against the defendant for the sum of three hundred and fifty and 00-100 dollars, and the cost of this action.

January 20, 1919.

Answer: The defendant above named, answering the amended complaint of the plaintiff herein, says:

1. That it admits paragraph 1 of the complaint.

2. That it denies each and every other allegation in said complaint contained.

Wherefore, defendant prays that the complaint be dismissed with costs.

The first witness to testify at the trial of the case was W. W. Geiger, who, being called by the plaintiff and duly sworn, said:

On March 27, 1918, I purchased for the plaintiff in this

case, at the National Stock Yards, East St. Louis, Mo., eighteen horses and seven mules, and shipped them over the Mobile & Ohio Railroad Company to the plaintiff, J. H. Faulk, at Clinton, S. C. The horses and mules were in good condition when placed in loading pens preparatory to being loaded on the cars, but I did not see them in the car. After I had seen to the placing of the horses and mules in the loading pens, I left East St. Louis, and came to Columbia, but did not travel with the shipment of horses and mules. From Columbia I went to Clinton to attend to the unloading of the horses and mules which came into Clinton over the Seaboard Air Line Railway, and which were delivered to Mr. Faulk by that company at Clinton. When the shipment was unloaded, I noticed that two of the mares appeared to be sick, suffering from colds, or something of the kind. Not only did I notice the poor condition of these two mares myself, but my attention was called to their condition by a livery stable keeper in Clinton, whom I tried to get to take care of the mares until they were well enough to be moved. The shipment was carried from Clinton to Columbia over the Columbia, Newberry & Laurens Railroad, being shipped from Clinton the next morning after they were unloaded at Clinton.

The two injured horses were worth about one hundred and twenty-five dollars each, and one of them died shortly after it reached Columbia. We had Dr. Caughman, a veterinary surgeon, to examine the injured mares after they arrived at Columbia.

When I shipped these horses and mules from East St. Louis, I did not sign, or get any bill of lading, but later when I was again in East St. Louis, after this suit was commenced, I got a bill of lading covering this shipment, or a copy of one, and turned it over to Mr. Faulk. This

stock arrived at Clinton about March the 31st, for they were shipped out from there over the Columbia, Newberry & Laurens on the first of April.

On cross-examination the witness said the shipment started over the Mobile & Ohio Railway, that his dealings were with the agent of that company; that he did not get the bill of lading when in East St. Louis attending to the shipment; that it was to be mailed to him after getting the number of the car; that in a later trip to East St. Louis he got it as Mr. Faulk had not received it through the mail; that the shipment came through in the regular stock car in which they were loaded.

Dr. E. P. Caughman, another witness called by the plaintiff, after being duly sworn, said:

I am a veterinary surgeon, and have been practicing for several years in Columbia, S. C., where I now reside. On or about April 1, 1918, I was called upon to examine two mares for Mr. J. H. Faulk, which had just come in over the C., N. & L. Mr. Geiger, I think, pointed out the two mares to me. They were both suffering from mechanical pneumonia; that is pneumonia brought about from external injuries. I examined both mares and found that both of them had wounds near the front flank, between there and the place where the saddle girth is worn. These wounds were two perforations, about two or three inches apart, and seemed to have been made with a pitchfork. Both mares were breathing hard, and I saw at a glance that one of them had no chance to recover. The wounds were not exactly fresh wounds, for suppuration had set in, and it takes some time, two or three days, for suppuration to start up. After one of the mares had died, I held a post-mortem over her, and found that her lungs had been perforated by something that made a wound like that of a pitchfork. I would say that

the wound was several days old. The other mare, I understand, got well.. "On cross-examination, the witness said that the infection might have been caused by a wound 4, 5, or 6 days or more old."

J. H. Faulk, the plaintiff, being duly sworn, says:

On or about March 27, 1918, I had Mr. W. W. Geiger ship me from National Stock Yards, East St. Louis, Mo., a shipment of horses and mules. They were consigned to me at Clinton, but I never saw any of them until they were unloaded at Columbia from cars on the C., N. & L., over which line they had been shipped from Clinton. When they were unloaded, I noticed that two black, or bay mares were suffering from colds, or pneumonia. I am a live stock dealer, and have had a great deal of experience with sick horses, and can tell when a horse has a cold or pneumonia. These horses had pneumonia. I had Dr. Caughman examine these mares, and it was his opinion that they had mechanical pneumonia. One of the mares died shortly after being unloaded, and she was worth about one hundred and fifty dollars. The other got well, after I had kept her for a long time and at great expense. She, too, was worth one hundred and fifty dollars, but I only lost on her about one-half of her value. I doctored her myself, and was not put to any great expense in looking after her.

Motion for a Nonsuit. At the close of the testimony offered by the plaintiff, the defendant moved for a nonsuit upon three grounds, as follows:

1. Because the evidence of the plaintiff failed' to show that the injury alleged in the complaint was caused to the stock in question by any negligence or carelessness on the part of the defendant as alleged in the complaint.

2. That in the absence of any direct testimony showing the injuries complained of were caused by the terminal carrier, or by an intermediate carrier, if an intermediate carrier is sued, then under the Federal statute governing interstate shipments, it being admitted that this shipment was an interstate shipment, the action should be brought against the initial carrier, the initial carrier in this case being the Mobile & Ohio Railway Company, to which the shipment was delivered at East St. Louis.

3. The action herein is based on an implied contract, and the complaint expressly sets out that it was without ever having been entered into by express contract, either parole or in writing, and the testimony showing that the shipment was to proceed from East St. Louis, Mo., to Clinton, S. C., under a regular bill of lading to be issued upon obtaining the number of the car, which bill of lading was to cover the shipment; that the plaintiff is bound by the bill of lading issued at the time, and the conditions thereof, and the plaintiff's testimony showing that the shipment was to be made through an interstate bill of lading, then he is bound by the terms thereof, and must show what the contract was and that he complied with it.

After hearing argument on the motion, the trial Judge reserved his decision, and required the defendant to proceed with its evidence.

In its defense, the defendant swore two witnesses, who testified that on or about March 31, 1918, W. W. Geiger unloaded from cars brought into Clinton, S. C., by the Seaboard Air Line Railway Company a shipment of horses and mules, and that two mares appeared to be sick when they were unloaded. These witnesses testified that W. W. Geiger tried to get stablemen in Clinton to take care of the two mares for a few days, but could not find accommodation for them on account of their condition.

At the close of all the evidence, the trial Judge reverted to the motion for a nonsuit, and granted a nonsuit upon the grounds made by the attorney for the defendant.    Judgment was entered accordingly.

Thereafter, and in due time, the plaintiff served notice of his intention to appeal to the Supreme Court, and within proper time served the following exception with his proposed case for appeal:

Exceptions. 1. The plaintiff excepting to the rulings of his Honor, the trial Judge, alleges that his Honor erred in granting the defendant's motion for a nonsuit, because the evidence in the case showed that two mares were shipped to the plaintiff over connecting carriers from East St. Louis, Mo., to Clinton, S. C., and were delivered to the plaintiff at Clinton, S. C., in a damaged condition, and upon the proof of these facts, his Honor should have held that a presumption arose that the injury to the mares occurred while they were in the possession of the defendant, the terminal carrier.

2. The plaintiff also alleges that his Honor erred in holding that the Federal statutes regulating interstate commerce have superseded the laws of the State of South Carolina concerning the liability of connecting carriers for loss or damage to freight to such an extent as to do away with the presumption, arising under the laws of South Carolina, to the effect that, when freight is delivered to a consignee in a damaged condition by one of several interstate connecting carriers, the injury or damage to the freight occurred while the same was in the possession of the terminal carrier and by reason of its negligence.

3. The plaintiff further alleges that his Honor erred in granting defendant's motion for a nonsuit when there was

evidence upon every material allegation of the complaint sufficient to warrant submitting the case to the jury.

*Mr. Jas. S. Verner,* for appellant, cites: *The main question is whether the Carmack Amendment has changed the rule as to liability of the terminal carrier established in 66 S. C. 477:* 99 S. C. 470; 98 S. C. 468. *Statutory penalty was involved in 237 U. S. 537:* 100 S. C. 227; 101 S. C. 436. *Rule as to effect of Carmack Amendment in other States:* 65 So. 104 (La.); 143 Pac. 325 (Okla.); 84 Atl. 72 (Md.); 150 N. W. 508 (Wis.); 241 U. S. 190; 60 L. Ed. 948. *Upon delivery to carrier, the rights are regulated by the uniform bill of lading:* 95 Atl. 1002 (N. Y.). *Shipper and carrier bound by filed tariff rates:* 53 L. Ed. (U. S.) 901. *Burden on carrier to prove facts in relation to special contract relied upon by it:* 4 R. C. L., par. 377, p. 920.

*Mr. H. N. Edmunds,* for respondent, cites: *Original Interstate Commerce Act:* U. S. Comp. Stats. 1901, p. 3169. *Carmack Amendment:* U. S. Comp. Stats. 1911, p. 1307. *Effect of the amendment:* 226 U. S. 505. *Rule in 99 S. C. 470 superseded by 237 U. S. 537, which discusses the "presumption" announced in 66 S. C. 477. Controlling authority recognized in 100 S. C. 227.*

December 22, 1919.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE GARY.

This is an action for damages arising out of injuries to certain animals, as will appear by reference to the complaint, which, together with the testimony, the grounds of the motion for non suit, and the appellant's exceptions will be reported.

The first question that will be considered is whether there was any testimony tending to show that the animals were injured while in the possession of the defendant.

There is no direct and positive testimony that the horses were injured while being transported by the defendant, but it is susceptible of a reasonable inference to that effect. Having reached this conclusion, the action was properly brought against the terminal instead of the initial carrier. *Atlantic C. L. R. Co. v. Glenn,* 239 U. S. 388, 36 Sup. Ct. 154, 60 L. Ed. 344; *Georgia v. Blish Milling Co.,* 241 U. S. 190 36 Sup. Ct. 541, 60 L. Ed. 948.

As this case arose under the Interstate Commerce Law (Act February 4, 1887c, 104, 24 Stat. 379), it is unnecessary to construe a similar statute of this State; it being applicable only to intrastate commerce.

Reversed.