## McGINN v. OREGON–WASHINGTON R. & NAV. CO.*

(Circuit Court of Appeals, Ninth Circuit. May 18, 1920.)

No. 3412.

1. **Carriers** ☞177(3)—**Carmack Amendment makes initial carrier agent for others.**

The Carmack Amendment (Comp. St. §§ 8604a, 8604aa) denied to the initial carrier the privilege it formerly had to contract against its liability as agent for connecting carriers, and created an obligation on its part to carry to destination an interstate shipment, though no contract was entered into between the parties, so as to render it liable for loss or damages occasioned by connecting carrier.

2. **Carriers** ☞177(4)—**Carmack Amendment does not make subsequent carriers agents for each other.**

The Carmack Amendment (Comp. St. §§ 8604a, 8604aa) does not make a connecting carrier agent of the initial carrier or of another connecting carrier, or render it liable for loss occasioned by other connecting carriers, for which it is in no way accountable primarily.

3. **Carriers** ☞177(4)—**Under Carmack Amendment, last carrier is liable for misdelivery under bill of lading requiring notice of misdelivery.**

Where bill of lading issued by initial carrier, which under the Carmack Amendment (Comp. St. §§ 8604a, 8604aa) is the contract for the entire shipment, requires notice of misdelivery to fix liability of any of the carriers, the terminal carrier is bound by the contract to deliver the shipment in accordance with its terms, and is liable for loss or injury preventing such delivery, though occasioned on the lines of the connecting carrier.

4. **Carriers** ☞181¼, New, vol. 12 Key-No. Series—**Damages for misdelivery recoverable in action alleging negligence in shipment.**

An action for damages caused by negligence of one of connecting carriers can be treated as one for damages against the delivering carrier for failure to deliver in accordance with the terms of the contract.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action by J. B. McGinn against the Oregon-Washington Railroad & Navigation Company. Judgment for defendant notwithstanding verdict for plaintiff, and plaintiff brings error. Reversed and remanded with directions to enter judgment for plaintiff on the verdict.

R. L. Edmiston, of Spokane, Wash., for plaintiff in error.

A. C. Spencer and J. F. Reilly, both of Portland, Or., and Hamblen & Gilbert, of Spokane, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an action instituted by plaintiff in error against the defendant in error to recover damages for loss and injury to certain live stock, namely, 49 head of horses and mules, shipped by plaintiff in error from Grand Island, in Nebraska, under a bill of lading issued by the Union Pacific Railway Company for transportation over its railway and connecting lines to Spokane, Wash. The connecting lines were the Oregon Short

Line Railroad and the defendant in error, the Oregon-Washington Railroad & Navigation Company. Reference will hereafter be made to the parties as plaintiff and defendant. The live stock contract under which the stock was shipped contains the following provisions:

"Except as otherwise provided by statute law, the carrier undertakes to transport said shipment only over its own line, and acts only as the agent of the shipper with respect to the portion of the route beyond its own line. No carrier shall be liable for damages for loss, death, injury, or delay to said animals, or any thereof, not caused by it, but nothing contained in this contract shall be deemed to exempt the initial carrier in case of a through interstate transportation from any liability for loss, death, damage, or injury caused by it or any common carrier, railroad, or transportation company to which the livestock may be delivered under this contract. * * *

"The shipper will, at his own risk and expense, load, unload, care for, feed, and water the stock until delivery of same to consignee at destination, and will furnish, to go with the stock for that purpose, one or more attendants, according to the rules of the carrier, and if the shipper fails to furnish such attendant, or if the latter neglects to perform said duties, whatever shall be done by the carrier in respect to the handling and care of the stock in transit shall be considered as done by it at the request and as the representative of the shipper, and at the risk and expense of the shipper. * * *

"Unless notice of claim for shrinkage, detention, delay, loss, or death of, or damage or injury to, said live stock is presented in writing to the station agent of the carrier at the point of delivery, or at point of origin, within 90 days from the unloading of said stock at destination, or, in case of failure to make delivery, then within 90 days after a reasonable time for delivery has elapsed, and such notice be supplemented by shipper within 4 months from said date of unloading at destination, or, in case of failure to make delivery, then within 4 months after a reasonable time for delivery has elapsed, by filing with said agent definite claims in writing, specifying character and amount of claim such claim shall be deemed to have been waived, and each carrier participating in the service performed or called for by this contract shall be discharged from liability: Provided, however, that if loss, damage, or injury complained of was due to delay or damage caused or contributed to by the carrier, or its employés, while being loaded or unloaded, or if damaged in transit by carelessness or neglect of the carrier, or its employés, then no notice of claim or filing of claim shall be required as a condition precedent to recovery."

The evidence tends to show that at Pocatello, in Idaho, a station on the line of the Oregon Short Line, the animals were fed hay that was musty and moldy, and unfit for such use, and were given water to drink which was unwholesome for the purpose, and that by reason thereof they became sick and emaciated, and that 11 head of them died, 4 before delivery to the plaintiff at Walla Walla, Wash., and 7 shortly thereafter. The stock was discovered to be in bad condition before reaching Huntington, Or., and one of them died in the stockyards at that place. Huntington is the eastern terminus of the Oregon-Washington Railroad & Navigation Company. Because of the bad condition of the stock, they were delivered to plaintiff at Walla Walla, before reaching their destination. Plaintiff says he "received them and paid the freight under protest."

There was a stipulation between counsel which, among other things, recites that the defendant herein "is a part of the Union Pacific System of railways." At the head of the live stock contract is found this legend: "Union Pacific Railroad Company. Oregon Short Line Railroad Company. Oregon-Washington Railroad & Navigation

Company;" and a witness, the O.–W. R. & N. Co.'s agent at Walla Walla, testified that "the Union Pacific is the parent company; the others are subsidiary lines."

On a motion for a nonsuit and discharge of the jury, made by defendant at the conclusion of plaintiff's testimony, the court limited the inquiry thenceforth to whether or not the hay was actually furnished by the railroad company and respecting its quality, and denied the motion. When both parties had rested, the court submitted the cause to the jury under instructions; the parties through their counsel having stipulated that the question of sufficiency of the evidence may be considered by the court upon a motion for judgment notwithstanding the verdict, in case the jury returned a verdict in favor of the plaintiff. The jury returned a verdict for the plaintiff in the sum of $1,870. On motion of defendant for judgment in its favor notwithstanding the verdict, the verdict was set aside by the court, and a judgment rendered dismissing the action.

The controlling question presented for our consideration is whether the District Court erred in sustaining the defendant's motion and entering a judgment dismissing the complaint non obstante veredicto. This depends upon whether the defendant can be held liable under the live stock contract, in view of what is commonly known as the Carmack Amendment. Act June 29, 1906, c. 3591, § 7, 34 Stat. at Large, 584, 595 (Comp. St. §§ 8604a, 8604aa). That amendment requires the carrier receiving property for transportation from a point in one state to a point in another state to issue its receipt or bill of lading therefor, and renders it liable to the lawful holder for any loss, damage, or injury to such property caused by it or any common carrier, railroad, or transportation company to which such property may be delivered, or over whose lines it may pass, but preserves to the holder of such receipt or bill of lading every remedy or right of action which he has under existing law. The section likewise entitles the common carrier issuing the receipt or bill of lading to recover, from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment, or transcript thereof.

[1] Previous to the Carmack Amendment, the carrier could lawfully contract to carry to destination, even though the transportation were to be over its own and connecting lines. In such event, it constituted the connecting carriers its agents, and thereby rendered itself liable for loss or damage occasioned by any of the connecting carriers, for the obvious reason that the principal is liable for the acts of its agents. The carrier could, however, by contract, lawfully limit its liability to safe carriage over its own line only. In such event, the connecting carriers became the agents of the shipper, and not of the initial carrier. The effect of the Carmack Amendment is to deny to the carrier this privilege and to render any such contract a nullity. On the other hand, the amendment creates an obligation on the part of the initial carrier to carry safely to destination, where the shipment

is interstate, even though no contract is entered into between the parties, and renders it liable for loss or damage to the property occasioned by the connecting carriers. Such is, in effect, the holding of the Supreme Court in Atlantic Coast Line v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7. This holding has since been reaffirmed. Missouri, Kans. & Tex. Ry. Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213; Texas & P. Ry. Co. v. Leatherwood, 250 U. S. 478, 39 Sup. Ct. 517, 63 L. Ed. 1096. The last clause of section 20 of the act, as amended, likewise accords to the initial carrier a remedy against the connecting carrier by whose lines the loss or damage is occasioned. This section, also, by preserving to the shipper all remedy and right of action he has under existing law, explicitly sanctions such right and remedy.

[2] It can hardly be asserted with confidence that, previous to the Carmack Amendment, one of several connecting carriers could be charged with liability for damages accruing upon the line of another of such connecting carriers, which were not occasioned by the former. Nor do we understand that counsel makes any such contention here. The amendment does not, by any express declaration, purport to give such a right or remedy. While it does impose an obligation upon the initial carrier to answer in damages for loss occasioned by the successive connecting carriers, it does not impose any such obligation or liability upon a successive carrier for loss occurring upon the lines of other connecting carriers, for which it is in no way accountable primarily. Hudson v. Chicago, St. P., M. & O. Ry. Co. (D. C.) 226 Fed. 38. The bill of lading issued by the initial carrier, with its accompanying contract, contains the controlling contractual relations of the parties, including the succeeding connecting carriers, and the terms of such relations cannot be varied or modified by a new bill of lading issued by any connecting carrier. Missouri, Kans. & Tex. Ry. Co. v. Ward, supra; Texas & P. Ry. Co. v. Leatherwood, supra.

While the Carmack Amendment does, in effect, make the connecting carriers the agents of the initial carrier, it does not make the connecting carriers the agents of one another. The declaration of the court, in Atlantic Coast Line v. Glenn, 239 U. S. 388, 393, 36 Sup. Ct. 154, 155 (60 L. Ed. 344), that "in the nature of things the power to constitute an initial carrier the agent of the terminal carrier is not different from the power to make the terminal carrier the agent of the initial carrier," is not apposite here, as the declaration was made in view of a state statute. We find no exercise of any such power by the Carmack Amendment as to constitute the connecting carriers, as among themselves, agents of one another, with responsibility for loss or damage occasioned by any one of the connecting lines.

[3] But it is insisted by counsel that the defendant is liable as for failure to deliver the stock in the condition in which it was received for shipment, and is therefore liable for the damages sustained by the shipper. The Supreme Court, in Georgia, Fla. & Ala. Ry. v. Blish Co., 241 U. S. 190, 196, 36 Sup. Ct. 541, 544 (60 L. Ed. 948),

which was an action in trover to recover against the terminal company for a misdelivery, and for the value of a carload of flour which had been damaged while in transit over the lines of the connecting carrier next preceding it, in further construing the Carmack Amendment, was of the opinion, and so declared, that the statute was comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, including delivery; and the court goes on to say:

"When it [the initial carrier] inserts in its bill of lading a provision requiring reasonable notice of claims 'in case of failure to make delivery,' the fair meaning of the stipulation is that it includes all cases of such failure, as well those due to misdelivery as those due to the loss of the goods. But the provision in question is not to be construed in one way with respect to the initial carrier and in another with respect to the connecting or terminal carrier. As we have said, the latter takes the goods under the bill of lading issued by the initial carrier, and its obligations are measured by its terms (Kansas Southern Ry. v. Carl, supra; Southern Railway v. Prescott, supra); and if the clause must be deemed to cover a case of misdelivery when the action is brought against the initial carrier, it must equally have that effect in the case of the terminal carrier which in the contemplation of the parties was to make the delivery. The clause gave abundant opportunity for presenting claims, and we regard it as both applicable and valid."

So that, under the amendment, the terminal carrier is bound, by the bill of lading and the contract of the initial carrier, to deliver as the initial carrier is bound, and is liable for any loss or damage to the property that has been occasioned through the conduct of the carriers while in transit. This leads to the conclusion that the defendant here, being a terminal carrier, is liable for the loss and injury to the stock comprised by the shipment, although occasioned while it was in transit over the Oregon Short Line.

[4] Question is made that the form and theory of action adopted by plaintiff admit of no such relief, as it is said not to be for misdelivery, but for damages caused by the negligence of one of the connecting carriers. The form of action has the sanction of the court in Georgia, Fla. & Ala. Ry. v. Blish Co., supra. There the action was in trover, but the court was persuaded that it should look beyond the technical denomination of the pleading and treat it as one for damages against the delivering carrier. Such is the action here, not only in name, but in substance.

Having concluded that the defendant is rendered thus liable, it is not necessary to discuss the questions presented as to whether defendant was, in effect, a partner of the initial and succeeding carriers, or is otherwise liable because of shipping and other interrelations of the several connecting carriers. Nor is it essential to decide the questions arising upon objections and exceptions made and reserved during the trial.

The judgment of the District Court will be reversed, and the cause remanded, with directions to enter judgment for the plaintiff upon the verdict rendered by the jury.