GINSBERG *v.* WABASH RAILWAY CO.

1. CARRIERS—CARMACK AMENDMENT—COMMON-LAW LIABILITY OF COMMON CARRIERS.

> The Carmack amendment (34 U. S. Stat. pp. 584, 595) has not changed the common-law doctrine of liability of a common carrier for loss occurring on its own line through its negligence.

2. SAME—TERMINAL CARRIER'S LIABILITY—PRESUMPTIONS.

> A terminal carrier is presumptively liable for damages to the consignment resulting from negligence during transportation from the initial point.

Error to Wayne; Mandell (Henry A.), J. Submitted February 2, 1922. (Docket No. 118.) Decided October 2, 1922. Submitted on rehearing February 1, 1923. Former opinion affirmed April 27, 1923.

Case by Harry Ginsberg and others, copartners as H. Ginsberg & Sons, against the Wabash Railway Company for damages to certain horses in transit. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Beaumont, Smith & Harris (Thomas B. Moore,* of counsel), for appellant.

*Daniel J. Alpert (Paul J. Wieselberg,* of counsel), for appellees.

ON REHEARING.

PER CURIAM. This case involved a claim for damages charged to defendant as terminal carrier in the transportation of an interstate shipment of a car load of horses. In the original opinion (219 Mich.

On Carmack amendment as affecting State regulations as to stipulations limiting liability of common carriers for loss of, or damage to, goods, see notes in 44 L. R. A. (N. S.) 257; 50 L. R. A. (N. S.) 819.

665) the case was held properly submitted to a jury on the theory that the terminal carrier was presumptively liable for damages to the consignment resulting from negligence during transportation from the initial point.    In the opinion *Georgia, etc., R. Co.* v. *Blish Milling Co.*, 241 U. S. 190 (36 Sup. Ct. 541), was cited as authority and quoted from.

In their motion and brief for a rehearing counsel for defendant contend:

"The court erred in holding that the liability of this defendant, the terminal carrier of the shipment of horses, is to be determined by the *Blish Milling Company Case*, 241 U. S. 190 (36 Sup. Ct. 541). The late case of *Oregon, etc., Nav. Co.* v. *McGinn*, 258 U. S. 409 (42 Sup. Ct. 332), decided by the Supreme Court of the United States, since the instant case was submitted to, this court, holds that the language from the *Blish Case* quoted by this court, does not apply to a terminal carrier."

The *McGinn Case* also involved the question of damages to a car load of horses during interstate transportation in which it was sought to hold the terminal carrier.    There, as here, the initial carrier issued a standard form bill of lading.    It was for transportation of horses from Grand Island, Neb., to Spokane, Wash., routing the shipment over the Union Pacific line to Granger, Wyoming, thence over the Oregon Short Line to Huntington, Or., and thence over the defendant terminal carrier's line to its destination at Spokane.    A judgment directed for defendant in the United States district court of appeals was reversed by the circuit court of appeals (265 Fed. 81), which cited and apparently relied on the *Blish Case*.    On appeal the United States Supreme Court reversed the court of appeals holding that court had apparently misinterpreted the *Blish Case* in arriving at its decision.    The portion of the opinion in the

*Blish Case* said to have been misinterpreted by the court of appeals is quoted as follows:

"The terminal carrier takes the goods under the bill of lading issued by the initial carrier, and its obligations are measured by its terms; and if the clause must be deemed to cover a case of misdelivery when the action is brought against the initial carrier, it must equally have that effect in the case of the terminal carrier which in the contemplation of the parties was to make the delivery."

The court then said (in the *McGinn Case*):

"What was decided in the *Blish Case* was that the terminal carrier was liable for failure to make delivery, just as the initial carrier would have been if it had been sued for misdelivery, because by the terms of the bill of lading each was under obligation to make final delivery. The suit before us is not for misdelivery or other fault of the carrier sued, but for the fault, as alleged, of a prior connecting carrier."

Manifestly no question of presumption or burden of proof was involved in the *McGinn Case,* since it was alleged in plaintiff's pleading that the damage sought to be recovered for was the fault of the Oregon Short Line, a prior connecting carrier, caused by giving the horses unwholesome food and water at a named station on its line in Idaho, which resulted in the death of several of them. Here the action is for negligence of the carrier sued, directly so charged in plaintiff's declaration.

The *McGinn Case* in no way disturbs numerous former decisions that the Carmack amendment has not changed the common-law doctrine of liability of a common carrier for loss occurring on its own line through its negligence. Hutchinson in his work on Carriers (3d Ed.), vol. 3, § 1348, has summed up that rule as follows:

"But a connecting carrier, who has completed the transportation and delivered the goods to the con-

signee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers, being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession;" citing many decisions.

In *Chicago, etc., R. Co.* v. *Produce Co.*, 258 U. S. 369 (42 Sup. Ct. 328), handed down on the same date as the *McGinn Case*, the above statement of the common-law rule is quoted with approval. That opinion concludes with the statement:

"Nothing in the (Carmack) amendment indicates a legislative purpose to abrogate the accepted common-law doctrine concerning presumption. The suggestion that by imposing additional liability upon the initial carrier the amendment provides an adequate remedy for shippers, and thereby removes the necessity for any presumption against the terminal one and impliedly abrogates the rule, is unsound. There are adequate reasons why shippers should have the benefit of both; and we think congress so intended."

After carefully considering this record, in the light of the brief and argument of counsel on rehearing, we find no further material point not before presented and considered, or anything misleading in the former opinion which calls for change or reversal.

The judgment will stand affirmed.