MARGARET H. REMINGTON, Respondent, v. WILLIAM H. BARRETT, as President of the ADAMS EXPRESS COMPANY, Appellant.

Fourth Department, May 4, 1921.

Carriers — action against terminal carrier to recover for goods lost in transportation — necessary proof — presumption as to condition of goods when received by terminal carrier — Carmack Amendment permits but does not compel suit against initial carrier — said amendment not limited to causes of action then in being.

In an action against a terminal carrier to recover the value of goods lots in shipment it is not necessary to show that the goods were in the box in which they were shipped when they were delivered to the defendant.

The plaintiff made out a case by showing the delivery of the goods to the initial carrier in good condition and that the goods were not delivered by the terminal carrier.

There is a presumption that the goods were in the same state when received by the terminal carrier from the initial carrier that they were in when delivered to the initial carrier, and the burden is on the terminal carrier to overcome that presumption.

The Carmack Amendment permits but does not compel a shipper to sue the initial carrier for loss of goods in shipment; he may sue the connecting or terminal carrier.

The remedy or right of action reserved by the Carmack Amendment is not confined to causes of action then in being.

APPEAL by the defendant, William H. Barrett, as president of the Adams Express Company, from a judgment of the

Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 22d day of October, 1920, upon the verdict of a jury rendered by direction of the court, and also from the order directing a verdict to be found by the jury in favor of the plaintiff and from the order refusing to direct a verdict in favor of the defendant.

*P. W. Cullinan* [*Harry Stacy* of counsel] for the appellant.

*Harry C. Mizen* [*Edwin J. Mizen* of counsel], for the respondent.

HUBBS, J.:

The plaintiff delivered to the American Express Company, at Newton Center, Mass., on January 2, 1918, a pasteboard box, securely wrapped, containing a fur· neckpiece and muff of the value of $125, to be shipped by express to Pemberton, N. J. · The American Express Company did not have an office at Pemberton and the furs were delivered by it to the Adams Express Company, which company delivered the box on January sixteenth. At the time it was delivered there was a hole in it and the furs were gone.

This action was brought by the plaintiff against the Adams Express Company, the terminal carrier, to recover the value of the furs, alleging in the complaint that the furs were lost in transit through the negligence of the defendant. The answer is substantially a general denial. The plaintiff proved the delivery of the furs to the American Express Company and offered evidence as to the condition which they were in and the manner in which they were packed, the uniform express receipt, that the goods were not in the box when it was delivered and the value of the goods. At the close of the plaintiff's evidence the defendant made a motion for a nonsuit which was denied. The defendant then rested and the plaintiff moved for a directed verdict. The defendant's counsel said that he did not desire to have any question submitted to the jury. A verdict was directed for the plaintiff.

Upon this appeal the appellant urges three points: *First*, that the package was so insecure that the plaintiff was guilty of contributory negligence in sending it. There is no force in such contention, as there is no evidence to sustain it. *Second*, the appellant urges that there is no evidence that the furs

were in the box when it was delivered by the American Express Company to the Adams Express Company, that is, that the plaintiff failed to show that the defendant ever received the furs and, therefore, that the nonsuit should have been granted. This point is without force. The law seems to be well settled in this State that where goods are delivered to an initial carrier to be shipped over the lines of a connecting carrier and are lost during transportation, and the action is brought against the connecting carrier, the plaintiff makes out a case by showing the delivery of the goods to the initial carrier in good condition and that they were delivered by the connecting carrier in a damaged condition or were lost. There is a presumption of law that the goods were in the same state when received by the connecting carrier from the initial carrier that they were in when delivered to the initial carrier, and the burden is cast upon the connecting carrier to overcome that presumption. (*Berkowitz* v. *Chicago, Milwaukee & St. Paul R. Co.*, 109 App. Div. 878; 10 C. J. 556, § 924, and cases cited.)

Appellant's third point is that the action could not be maintained against the terminal carrier but that it should have been brought against the initial carrier as the shipment was an interstate commerce shipment and controlled by the Carmack Amendment to the Hepburn Bill, amending the Interstate Commerce Act. (See 34 U. S. Stat. at Large, 593, 595, § 7, amdg. 24 id. 386, § 20. See, also, 34 id. 838, Res. No. 47, and First and Second Cummins Amendments, being 38 U. S. Stat. at Large, 1196, 1197, chap. 176, and 39 id. 441, 442, chap. 301.) Under the common law, in an action against a carrier for loss or damage to goods shipped, in case the goods passed over the lines of more than one carrier the plaintiff took the chance of suing the right carrier and only the carrier who was negligent was liable for the damage. That resulted in great expense, confusion and hardship, as it was difficult in the case of loss or damage to goods shipped over the lines of several carriers to locate the carrier who was at fault, and even if that were possible that carrier might reside in a jurisdiction different from that of the person suffering the loss. To correct this unsatisfactory condition the Carmack Amendment was passed which provided in substance that in a case

of that kind the action might be brought against the initial carrier for any loss suffered during the shipment of the goods, whether it occurred on the line of the initial carrier or on the line of some connecting carrier, leaving to the initial carrier the adjustment of the equities between itself and the connecting carriers. The Carmack Amendment contains the following proviso: " *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Prior to the making of the shipment herein the phraseology of the Carmack Amendment had been changed by the First Cummins Amendment (38 U. S. Stat. at Large, 1196, 1197, chap. 176) as follows: " *Provided, further,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law." The Second Cummins Amendment (39 U. S. Stat. at Large, 441, 442, chap. 301) had also provided that the provisions of the statute respecting liability for full actual loss, damage or injury, shall not apply to passenger baggage and shipments of property except ordinary live stock if rates shall be based on declared values. Under the above quoted provision it has been held repeatedly that one suffering damage through the negligence of a carrier could sue either the initial carrier or the connecting carrier whose negligence caused the loss. (10 C. J. 543; *Georgia, Florida & Alabama Railway* v. *Blish Co.,* 241 U. S. 190; 60 Law. Ed. 948; *Pacific Coast Borax Co.* v. *Shippers Navigation Co.,* 108 Misc. Rep. 198.)

There is no force in the appellant's argument that the right reserved by the Carmack Amendment of any remedy or right of action existing before the passage of that amendment related only to causes of action then in being. It was clearly the intent of the statute to reserve the right to the common-law action, whether existing at the time of the amendment or that might arise thereafter, and the authorities above cited clearly establish that proposition.

I can find no error in the case requiring a reversal. I recommend, therefore, that the judgment be affirmed, with costs.

All concur.

Judgment affirmed, with costs.