JOHN BOLATTI, Appellant, v. WABASH RAILWAY COMPANY et al.,
Appellees.

**RAILROADS:** Injury to Goods—Notice to Railway (?) or Director
1    General (?)   In an action against the director general of railroads,
a notice of damages directed to the railway company, and not to
the said director, and served on one of the agents of director, is all-
sufficient, especially when the bill of lading required such notice to
be given to the initial or delivering carrier.

**CARRIERS:** Negligence—Jury Question.   Evidence held to present a
2    jury question on the issue of negligence in the transportation of
fruit.

*Appeal from Monroe District Court.*—SENECA CORNELL, Judge.

OCTOBER 18, 1921.

ACTION for damages to a shipment of grapes.   Directed
verdict for defendant, and judgment against plaintiff for costs.
Plaintiff appeals.   The material facts are recited in the opinion.
—*Reversed.*

*Price & Hickenlooper,* for appellant.

*D. W. Bates,* for appellees.

STEVENS, J.—The shipment in controversy, which is a car-
load of grapes, originated with the Southern Pacific Railway
Company at Burbank, California, on September 29, 1918, and
was tendered to the plaintiff at Albia, Iowa, the
designated point of destination, by the Wabash
Railway Company, on October 10th.

1. RAILROADS: in-
jury to goods:
notice to rail-
way (?) or
director
general (?)

The action, as originally brought, was
against both the Wabash Railway Company and the director
general of railroads.   Later, however, the action against the
railroad company, on motion of the defendant, was dismissed.
The negligence charged in plaintiff's petition is the alleged
failure of the employees and agents of the defendant who were

in charge of the instrumentalities of the Wabash Railway Company to promptly transport the car to its destination, and its failure to sufficiently and timely ice the same.

At the conclusion of plaintiff's testimony, the defendant moved the court for a directed verdict upon two principal grounds, as follows: (a) That no notice or claim for damages was served upon the director general of railroads by plaintiff, as required by the bill of lading; and (b) that the testimony of plaintiff failed to show negligence on the part of the Wabash Railway Company, but that it, in fact, disclosed that the negligence, if any, causing the damages complained of, occurred while the car was in charge of the initial or intermediate carrier. As stated, the motion was sustained, and a verdict returned for the defendant.

I.   The bill of lading contained a provision that claims for damages on account of loss or injury to property in transit by the carelessness or negligence of the railroad company must be made in writing to the originating or delivering carrier within six months after delivery of the property. Plaintiff attempted to comply with this provision of the contract by causing a notice and verified claim, bearing the caption "Claim for goods destroyed by the Wabash Railway Company," to be served upon James Wallace, the agent of the director general in charge of the station of the Wabash Railway Company at Albia, Iowa. The notice, in substance and form, in all other respects complied with the requirements of the contract. *Georgia, F. & A. R. Co. v. Blish Mill. Co.*, 241 U. S. 190 (60 L. Ed. 948). It was certain, definite, and specific, and its purport, purpose, and intention to claim damages on account of the negligence of those in charge of the shipment could not have been mistaken or misinterpreted.

It is not claimed by counsel for appellee that the notice could have been served conveniently or promptly upon any other officer or agent of the director general than the one upon whom service was made. If the notice and claim for damages was insufficient, it is solely because it was not directed to the director general, instead of to the Wabash Railway Company. No particular form of notice is required. The notice served to apprise the agents and officers of the director general that plaintiff claimed damages on account of the negligent transportation of

the grapes. The bill of lading, by its specific terms, required notice to be given either to the originating or to the terminal carrier. No one was prejudiced by the failure of the plaintiff to include in the caption the name of the director general, or to make the notice run directly to him. The notice itself clearly indicated what shipment was referred to, and the amount of damages claimed. General Order No. 50, requiring all actions for damages to property in transit occurring after December 1, 1917, to be brought against the director general directly, was promulgated by the director general on October 28, 1918, which was after the grapes were tendered to the plaintiff, and after the notice was served upon the agent.

So far as we are advised, the Federal Supreme Court has not held that written notice of the consignee's intention to file a claim for damages, or the claim itself, must be addressed to the director general. Order No. 50, which is relied upon by counsel for appellee, does not purport to cover this point. Its purpose was to require that all actions at law and suits in equity for loss or damage to property arising after December 31, 1917, based on contract binding upon the director general, be brought directly against the director general. The court, in *Missouri Pac. R. Co. v. Ault*, 256 U. S. — (65 L. Ed. 647), held that:

"The president took over the physical properties, the transportation systems, and placed them under a single directing head; but he took them over as entities, and they were always dealt with as such (Bull. No. 4, p. 113). Each system was required to file its own tariffs. General Order No. 7, Bull. 4, p. 151. Each was required to take an inventory of its materials and supplies. General Order No. 10, id. p. 170. Each Federal treasurer was to deal with the finances of a single system; his bank account was to be designated '(Name of Railroad), Federal Account.'"

It seems to us that the notice in question fully met the requirements of the contract, and that no prejudice resulted to anyone on account of its being directed to the railway company, instead of the director general. Wallace testified that he was the agent of the director general, and that he forwarded the claim to the freight claim agent of the railroad company, whom he supposed to be also under the director general.

II.   The condition of the grapes when they arrived at their destination is described by the witnesses as "full of worms," "dried up," "very nearly all rotten," and that they "looked like they were burned."  The witnesses further testified concerning the condition of the car when opened, that "it looked like the car was on fire;" that, "for about 15 or 20 minutes, we could not get into the car on account of the smoke;" that, "when the door of the car was opened, it was hot;" and that:

2. CARRIERS: negligence: jury question.

"When we opened the door at first, we could see nothing, and we opened another door so the air could go through, the smoke go off; and we tried to go to the back of the car, to take out some grapes.  It was warm in the car up near the door.  I saw something that looked like smoke coming out of the car."

Robert A. Albertus, one of the consignors, testified that the grapes were ripe, but in good condition, when delivered to the Southern Pacific, and that, if the car had been sufficiently and properly iced, they should have been in good condition at destination.   One witness testified that there were about 2½ feet of ice in the bottom of the ice compartment; and another witness, that it contained only about 1½ feet.  The evidence does not show when the car was received at Kansas City by the Wabash Railway Company, nor the time actually consumed in the transportation from that point.

Clearly, there was sufficient evidence of negligence to carry the case to the jury.

But it is vigorously argued by counsel for appellee that plaintiff's evidence fully exonerated the terminal carrier from negligence.  Toney Trevisol, who paid the draft attached to the original bill of lading to the bank for the plaintiff, testified that the defendant's agent told him that, according to the bill, the car was not iced after it left Los Angeles until it reached Kansas City.

On cross-examination, the witness was asked to state whether, if the car was not iced after it left Los Angeles and before it arrived at Kansas City, the grapes would not have been completely spoiled before the car arrived at that point.  The competency of the witness to answer the question was challenged, and the objection was overruled by the court.  The answer, how-

ever, was that he did not know. No other evidence as to when or where the car was iced, or what quantity was placed in the compartment, was offered. While the evidence may not have been strong on some features of the case, yet, under familiar rules of law, it was sufficient to require the submission of the case to the jury. We therefore hold that the motion to direct a verdict should have been overruled, and that the judgment of the court below cannot be allowed to stand.—*Reversed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.