**Hyman J. Berg, Trading as Berg Truck and Parts Company, Appellees, v. Samuel Schreiber and Harry Schreiber, Trading as Schreiber Trucking Company, Appellants.**

**Gen. No. 44,690.**

478

TUOHY, J., dissenting on rehearing.

Opinion filed April 4, 1949.  Additional opinion filed May 13, 1949.  Released for publication June 21, 1949.

DEMPSEY, MILLS & CASEY, of Chicago, for appellants; JOHN W. MILLS, of Chicago, of counsel.

DIRECTOR & LIEBENSON, of Chicago, for appellees; HAROLD A. LIEBENSON, of Chicago, of counsel.

Mr. Presiding Justice Feinberg delivered the opinion of the court.

Defendants by this appeal seek to reverse a judgment in favor of plaintiffs for $3,216.83, in an action to recover for damage to a shipment of Jeep parts delivered to defendants as common carriers at Butler, Pennsylvania, to be delivered to the plaintiffs' place of business in Chicago, Illinois. The complaint alleged defendants were common carriers and undertook to safely transport said shipment for a reward to be paid by plaintiffs to defendants upon the delivery of said merchandise. Defendants, in an amended answer to the complaint, alleged as a defense that the plaintiffs failed to file a written claim or demand for loss or damage to the shipment with them or their agents before the institution of the suit, in accordance with the provisions of the Interstate Commerce Act and the provisions of the Uniform Bill of Lading adopted and on file with the Interstate Commerce Commission, section 2, paragraph (b), of which provides as follows:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property . . . or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the plaintiff that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

It appears from the evidence without dispute that there was no written claim or demand presented to the defendants prior to the institution of the suit. It appears also from the evidence that when the defendants were notified of the damaged condition of the shipment, an insurance adjuster for the carrier made out a written list of the damaged parts with the assistance of one of the plaintiffs' men, and such a list was given to the plaintiffs by the adjuster. It also appears without dispute that the defendants' adjuster requested plaintiffs to file written proof of loss and forms entitled ''Loss and Damage Claim Form'' were sent to plaintiffs by defendants' adjuster, and that defendants' adjuster refused to make any commitment as to payment for claimed loss until the written proof of loss was received. The record also discloses that there was on file with the Interstate Commerce Commission an approved tariff schedule and uniform bill of lading adopted by defendants as common carriers and bound thereby.

In the instant case defendants issued no bill of lading for the shipment, and the controlling question is whether under these circumstances, even though a bill of lading was not issued by the defendant carriers, the plaintiffs were bound by the provisions of the Interstate Commerce Act and the tariff schedule and uniform bill of lading on file with the Interstate Commerce Commission. If so, then as a condition precedent, it was incumbent upon the plaintiffs, before bringing suit and within nine months after the alleged damage, to file a written claim with the carrier. This court in *Lewis v. Roth,* 328 Ill. App. 571, had the following to say upon this question, at page 573:

''By giving oral notice plaintiff was not relieved from filing his written claim within the period specified in the bill of lading. (*Baltimore & O. R. Co. v. Leach,* 249 U. S. 217; *Southern Pac. Co. v. Stewart,* 248 U. S.

446, 450; *St. Louis, I. M. & S. R. Co. v. Starbird,* 243 U. S. 592.)"

In *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400, at page 405, the court said:

"But the liability imposed by the act is not dependent upon the issue of such receipt or bill of lading. The liability is created by the railroad company receiving and agreeing to the shipment of the property. The receipt or bill of lading is evidence of the contract but its issuance is not necessary to create the liability. It is expressly provided that no contract, receipt, rule or regulation shall exempt the railroad company from the liability imposed. It seems obvious that the railroad company cannot be permitted to relieve itself of liability by failing to perform its duty in the issuance of the bill of lading."

In *Boston & M. R. v. Hooker,* 233 U. S. 97, at page 113, the court said:

"The precise position of the defendant is that as the limitation of liability for baggage was filed and posted as a part of its schedules for passenger tariff, the limitation thereby became and was an essential part of its rate, from which under the interstate commerce law it could not deviate, and by which the plaintiff was bound, regardless of her knowledge of or assent to it. If the premise is sound, then the conclusion follows, for the public are held inexorably to the rate published, regardless of knowledge, assent or even misrepresentation."

It is clear to us that there can be no waiver of the conditions in the tariff schedules and bill of lading on file with the Interstate Commerce Commission and the condition precedent requiring the filing of a written claim or demand with the carrier. Such waivers could result in illegal discrimination against shippers by railroads, the very thing prohibited and intended to be pro-

hibited by the Interstate Commerce Act. *Texas & P. R. Co. v. Leatherwood,* 250 U. S. 478, 481; *Cohen v. Texas & New Orleans R. Co.,* 303 Ill. App. 606, 612. It follows that plaintiffs have failed to comply with the condition precedent and have no right of action against the carrier.

The judgment of the superior court is reversed.

*Reversed.*

TUOHY and NIEMEYER, JJ., concur.

ADDITIONAL OPINION ON PETITION FOR REHEARING.

Plaintiff in his petition for rehearing insists that we have misconstrued the legal effect of the provision in the uniform bill of lading (section 2, paragraph (b), *supra*). Plaintiff argues that it is not necessary that any particular form of claim in writing be made to satisfy the provision of the bill of lading, and that the facts in the instant case satisfy the requirement. We agree that no particular form of claim in writing may be necessary, but we repeat that a claim in writing, contemplated by this provision, must be filed with the carrier within the time limited by the provision. There can be no waiver of this provision in favor of this plaintiff, as pointed out in the cases cited in our opinion.

The document claimed to be a compliance with the provision of the bill of lading in question was a memorandum prepared by the adjuster and the plaintiff as they examined the damaged items. One column of the document referred to the items delivered in good condition. Another column referred to items rejected. No column indicating the amount of any money claim was listed covering the rejected items. The adjuster for the carrier testified:

"I had conversations with the plaintiff, Mr. Berg, regarding this claim. I don't recall the exact dates but the first conversation was maybe a week or ten days

after I mailed this letter enclosing the forms. It was a telephone conversation. Mr. Berg called me. Mr. Berg wanted to know what disposition was going to be made of his claim. I told him that we couldn't come to any conclusion about the disposition of his claim until we had received the loss and damage forms which I had previously sent to him. . . . He steadily failed to send in the forms and I steadily refused to make any commitment until we had received them. I never received a verified form of claim loss or damage by the plaintiff, Mr. Hyman Berg. I did by verbal claim only. . . . I made a written list of loss on the damaged parts. Both parties were present. We had to work together . . . ."

This testimony is undisputed.

Defendants not only did not waive the requirement of a written claim to be filed, but insisted upon compliance with the provision of the bill of lading by furnishing the forms desired, and refusing to discuss the claim until the forms furnished to plaintiff were filed as a claim.

Plaintiff again insists that *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 241 U. S. 190, is controlling and that the memorandum prepared by the adjuster and plaintiff in the instant case, under the holding in the case cited, constitutes a sufficient compliance. The facts in the case cited are radically different. There, several telegrams were sent to the carrier by the shipper regarding the damaged condition of the shipment. The final telegram sent to the carrier read:

"We will make claim against railroad for entire contents of car at invoice price. Must refuse shipment as we can not handle."

The court in the case cited, in referring to these telegrams and referring to a similar provision in the bill of lading, at page 198 said:

"The stipulation required that the claim should be made in writing, but a telegram which in itself or taken with other telegrams contained an adequate statement must be deemed to satisfy this requirement."

In the very case cited and relied upon by plaintiff, the court, at page 197, repeats the well settled principle of law:

"But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed."

We adhere to the conclusion reached in our opinion, and the petition for rehearing is denied.

NIEMEYER, J., concurs.

TUOHY, J., dissents.

Upon further consideration of this case, I am of the opinion that in our original consideration of the case we failed to properly appraise the significance of plaintiff's exhibit 2 which was designated "Summary of Shipment Via Schrieber Trucking Co. August 17, 1945." This exhibit contained a complete list of all goods which were contained in the truck prior to the time that it was overturned in transit. It further shows those goods which were delivered in good condition and those goods which were rejected after the accident and the damage to the shipment. Finally in pencil on the list appears a revised statement of the damaged parts for which claim is made.

The following facts with reference to the preparation of this document are undisputed. Immediately after the truck of merchandise was wrecked one Mr. Mulder, an attorney and claim manager for Markel Service,

Inc., defendants' insurance service company, inspected the damaged truck and caused it to be taken to the plaintiff's place of business. There the merchandise was sorted and certain items rejected by plaintiff. The merchandise was left at the terminal of the trucking company for 10 or 12 days and was eventually picked up by the plaintiff, according to Mulder's testimony, "by agreement between the parties, as he wanted the parts and we had no use for them, so we just turned over all the damaged parts to him." It further appears from Mulder's testimony that during this period one of plaintiff's men and he went through the merchandise "and at that time I made a written list of loss on the damaged parts. Both parties were present. We had to work together on the thing."

On the trial of the case the copy of the list which had been in possession of the plaintiff was missing, and defendants' attorney produced the document which was introduced in evidence as plaintiff's exhibit 2 and which has been above described.

The all important question in this case is whether or not this document constitutes a claim. At the time this case was tried no defense had been pleaded that plaintiff had failed to file a claim within the provisions of the Interstate Commerce Act, U.S.C.A., title 49, which requires carriers to issue bills of lading and provides penalties for undue and unreasonable preferences. The trial of the case was practically concluded when this defense was for the first time advanced. The court then permitted the introduction of Mulder's testimony and of the Uniform Bill of Lading, and some days after the conclusion of the trial permitted the filing of an amendment to the original answer to comport with the proof. No objection was raised to the introduction in evidence of plaintiff's exhibit 2.

The majority opinion held in effect that no written claim having been filed within the provisions of the Uniform Bill of Lading, the defendant could not re-

cover under the rule of *Lewis v. Roth,* 328 Ill. App. 571, and similar cases. I am of the opinion that the majority erred in so holding because in my opinion plaintiff's exhibit 2 constitutes a sufficient written claim. The parties themselves regarded it as a written claim as appears from the record at the time of the introduction of the exhibit in evidence. The court, inspecting the document and noticing the pencil notations thereon, asked this question (record, p. 45): "The column in pencil, following the column 'Rejected' refers to what?" Mr. Liebenson (attorney for plaintiff): "*Claims* for the damaged parts because he salvaged some." (Italics mine.) There was no objection made by the defendant to this characterization of the document as a claim. On the trial in the same colloquy Mr. Mills, attorney for the defendants, said, referring to this document, "That is a complete list, everything that was on the truck. The pencil notations on the right hand side are the damaged parts that are *being claimed* in this case." (Italics mine.) While it does not appear from the evidence just when the pencil notations were placed upon the document, it is clear that the document itself was prepared within 10 days after the loss occurred, that one copy of the document was given to each of the parties and that the document introduced at the trial of the case was the defendants' copy and had been in their possession. Under these circumstances, it seems to me that a claim in writing was delivered to the defendants within a short time after the loss and that until the trial of the case was practically concluded both parties treated the document as a claim. It is true that on the trial the attorney for defendants' insurance service company, in testifying, stated that he had submitted formal proofs of loss to the plaintiff which were not filled out, and in a telephone conversation he told the plaintiff "we couldn't come to any conclusion about the disposition of his claim until we had received the loss and damage forms

which I had previously sent to him''; and further, ''I never received a verified form of claim loss or damage by the plaintiff, Mr. Hyman Berg.'' There is no requirement in the Act that any verified proof of loss be filed, neither is there any provision that the notice of proof of loss shall follow any prescribed form. In the case of *Georgia, F. & A. R. Co. v. Blish Milling Co.,* 241 U. S. 190; where the defense was similar to that in this case, the facts indicate that a shipment of flour was damaged while on the carrier's line en route from the plaintiff shipper to its consignee. The defendant carrier notified the shipper by telegram that the consignee refused to accept the shipment on account of damage and asked for advice as to disposition. A further exchange of telegrams indicated what the damage consisted of. After inspection by the shipper's representative, a telegram was sent to the effect that ''we will make claim against railroad for entire contents of car at invoice price. Must refuse shipment as we can not handle.'' It was contended by the plaintiff that this constituted a sufficient claim to comply with the provisions of the Act. The Supreme Court, in referring to the bill of lading, stated (p. 196) : ''The purpose of the stipulation is not to escape liability but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations.'' Referring further to the notice in the case, the court said (pp. 197, 198) ;

''But, while this is so, we think that the plaintiff in error is not entitled to succeed in its ultimate contention under the stipulation for the reason that it appears that notice of the claim was in fact given. It is true that in the statement made by the Court of Appeals it is said that so far as appears from the record 'no

claim was filed by the shipper.' We must assume, however, that this was in effect a construction of the provision as requiring a more formal notice than that which was actually sent. For the court had already set forth the uncontroverted facts in detail showing that the shipper (having made an investigation in response to the communication of the traffic manager of the Railway Company) had telegraphed to the latter, on June 7, 1910, only five days after the arrival of the goods at destination, as follows: 'We will make claim against railroad for entire contents of car at invoice price. Must refuse shipment as we can not handle.' In the preceding telegrams, which passed between the parties and are detailed by the state court in stating the facts, the shipment had been adequately identified, so that this final telegram taken with the others established beyond question the particular shipment to which the claim referred and was in substance the making of a claim within the meaning of the stipulation,— the object of which was to secure reasonable notice. We think that it sufficiently apprised the carrier of the character of the claim, for while it stated that the claim was for the entire contents of the car 'at invoice price' this did not constitute such a variance from the claim for the value of the flour as to be misleading; and it is plain that no prejudice resulted. Granting that the stipulation is applicable and valid, it does not require documents in a particular form. *It is addressed to a practical exigency and it is to be construed in a practical way.''* (Italics mine.)

I regard the notice that was here given to the company as compliance with the test laid down by the United States Supreme Court in the *Blish* case. The object in filing a claim as stated by the Supreme Court was to give reasonable notice. The carrier in the instant case was accorded such. Its representative was present, saw the damaged goods immediately after the accident, had over 10 days to inspect it, and to-

gether with the plaintiff prepared a written document setting forth in detail the loss, which document on the trial of the case was referred to by both parties as a claim.

I am of the opinion that a rehearing should be granted and that the judgment of the trial court should be affirmed.