19845

SOUTH CAROLINA STEEL CORPORATION, Respondent, v. SOUTHERN RAILWAY COMPANY, Appellant.

(206 S. E. (2d) 828)

544

*Frank H. Gibbs, III, Esq.,* of *Rainey, Fant & McKay,* Greenville, *for Appellant,*

*David B. Ward, Esq.,* of *Horton, Drawdy, Marchbanks, Ashmore, Chapman & Brown,* Greenville, *for Respondent,*

*Frank H. Gibbs, III, Esq.,* of *Rainey, Fant & McKay,* for *Appellant, in Reply.*

July 1, 1974.

BUSSEY, Justice:

In this action the plaintiff-respondent seeks to recover for damage done to certain fabricated steel beams and appurtenances while in transit in the course of a shipment by rail from Greenville, South Carolina to a customer in Pekin, Illinois. By stipulation of the parties, the sole issue involved upon this appeal is that of compliance or noncompliance by the plaintiff-shipper with the contractual provisions of the bill of lading requiring the filing of a written claim within . nine months of the delivery of the property in question. On motions for summary judgment the trial court decided this issue favorably to the plaintiff. By the stipulation the defendant-appellant has expressly waived its right to a trial on any of the other issues raised by the pleadings, including the amount of damages.

As to factual situation we quote the following from the agreed statement of the case: .

"The relevant facts presented by the pleadings and the affidavits offered by the parties are as follows: The property in question was delivered to the Defendant by the Plaintiff in an undamaged condition on July 18, 1970, and July 22, 1970. The property was delivered by the Defendant to the consignee, a customer of the Plaintiff, in Pekin, Illinois,

on August 4, 1970. Shortly thereafter, the Defendant received written damage reports, dated August 5, 1970, from the receiving railroad company. On February 17, 1971, the Plaintiff received from the consignee copies of the same two damage reports. Immediately upon receipt of the damage reports, an agent of the Plaintiff called the Greenville office of the Defendant, discussed the damage reports and claims with several agents of the Defendant, informed them of the material provisions of the damage reports, and asked for specific instructions concerning filing claims. One of the agents of the Defendant instructed the agent of the Plaintiff that the claim could not be processed until the necessary forms had been completed and that it would be necessary to determine the exact amount of the claim and supply such information on forms supplied by the Defendant. Upon receipt of an invoice from the consignee, showing the exact amount of damage, the agents of the Plaintiff immediately transmitted that information to the Defendant on March 23, 1972. The Defendant refused to pay the Plaintiff's claim on the grounds that the Plaintiff had failed to file a written claim within nine (9) months after delivery of the property in question as required by Section 2(b) of the Uniform Domestic Straight Bill of Lading which applied to the shipment in question."

The shipment involved in this case being one in interstate commerce, Federal law controls this action. *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314; *Georgia, Florida & Alabama Railway Co. v. Blish Milling Co.,* 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948.

Title 49, U. S. C., Section 20(11) provides in part as follows: "that it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months."

In accordance with the foregoing statute the shipment in question was made subject to the terms and conditions of

the Uniform Domestic Straight Bill of Lading, Section 2(b) thereof providing in pertinent part as follows: "as a condition precedent to recovery, claims must be filed in writing with the * * * carrier * * * within nine months after delivery of the property * * *."

The written damage reports received by the defendant railroad from the receiving railroad company in August, 1970, showed not only the nature of the damage but the probable cause thereof, to wit: "that the beams were damaged from being bumped very hard and the loss could have been prevented by handling the cars more carefully and by using blocking inside the cars to keep the steel beams from sliding."

While the defendant railroad was promptly notified by the receiving railroad, which delivered the damaged shipment to the consignee, as far as the record goes the shipper knew nothing of the damage until February 17, 1971, when it received from the consignee copies of the same two damage reports, sent months before by the receiving railroad to the defendant in this case. Obviously the receiving railroad at some point made copies of the report available to the consignee. The record is silent as to the time and circumstances of the consignee obtaining the damage reports, but from the agreed facts a reasonable inference is that the consignee did not immediately discover the damage but upon discovery thereof requested a report from the receiving railroad. No other explanation, readily occurs for the delay in the plaintiff-shipper being informed by the consignee of the damage.

"The purpose [of the requirement for written notice] is not to escape liability, but to facilitate prompt investigation * * *. * * * The stipulation * * * does not require documents in a[ny] particular form. It is addressed to a particular exigency and is to be construed in a practical way." *Georgia, Florida & Alabama Railway Co. v. Blish, supra.* Neither the briefs of counsel nor research on our part has disclosed any decision of the U. S. Supreme Court, or of

any Circuit Court of Appeals, which is anything like precisely in point factually with the present case. A review of a number of circuit decisions would indicate that the circuits are not in complete accord as to how to construe this requirement of a written claim, within the prescribed time, in a "practical way."

The decisions, however, both Supreme Court and Circuit, are in accord that the claim or other documents constituting a claim do not have to be in any particular form; but that neither mere actual knowledge on the part of the carrier nor an oral claim by the shipper or consignee will suffice. It is also settled by the *Blish* case that a carrier cannot waive the requirement of a written claim, as to do so would allow a carrier to discriminate amongst shippers contrary to law.

It also seems to be settled by the *Blish* case and by *Chesapeake & Ohio Railroad Company v. Martin*, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983, that a shipper may not invoke the doctrine of estoppel, to avoid the time limitation for filing claim, predicated upon the conduct of the carrier which gave rise to liability in the first instance. Expressly reserved in the *Martin* case was the question of whether a shipper might, under other circumstances, rely upon the doctrine of estoppel. Under the rationale of these decisions it would appear that the test as to whether a shipper can invoke the doctrine of estoppel is whether or not permitting the application thereof to a given state of facts would open the door to a shipper discriminating among shippers contrary to law.

In the present case there is conduct on the part of the defendant carrier, independent of any conduct giving rise to the liability initially, which should be held to estop the carrier from avoiding its liability for failure of the shipper to file a formal written claim within the nine month period. Furthermore we cannot see where so holding would invite, permit or promote any discrimination on the part of the carrier as between different shippers.

> The primary purpose or objective of the requirement for a timely written claim being to give the carrier full opportunity to investigate, such purpose is sub-

stantially served when the carrier receives a prompt written report as to the damage and its probable cause. At no time within the nine month period could the plaintiff-shipper have furnished the carrier any more information than it already had in writing even if it had proceeded to timely file a formal written claim. But, aside from there being no prejudice to the carrier, it was responsible for the written claim not being timely filed when it advised the shipper, incorrectly, that the claim could not be completed and processed until the exact amount of damages thereof had been determined.

The carrier had written notice of the damage and loss at least six months prior to the shipper receiving any notice thereof. Immediately upon receiving such notice the shipper contacted the carrier and from that point on acted in accordance with the instructions of the carrier or its agents, promptly completing the claim and submitting a statement showing the cost of repairs as soon as the same could be obtained by the shipper. Under these circumstances we know of no reason why the carrier should not be estopped to deny liability, simply because the claim was not completely formalized in writing until after the expiration of the nine month period.

A holding that the carrier is not estopped, under the circumstances of this case, would we think tend to promote discrimination rather than prevent or discourage the same. If the carrier be not estopped by its conduct in this case, it is readily apparent that a carrier could discriminate by giving correct information to one shipper as to proper procedure for timely filing of a claim, but give to a shipper, which it did not wish to pay, incorrect information thereabout misleading such shipper into failing to file a formal written complaint until it was too late.

There is at least one in point Federal decision on the issue of estoppel, to wit: *Lehigh Valley Railroad Company v. State of Russia*, 2 Cir., 21 F. (2d) 396, cert. den. 275 U. S.

571, 48 S. Ct. 159, 72 L. Ed. 432, and we quote therefrom as follows:

"It is argued that a claim was not filed at the point of delivery, or at the point of origin, or within four months after delivery or time for delivery had elapsed. On September 11, 1916, the railroad company's agent for New York Harbor, on its letter head, wrote the agent of defendant in error advising him of the disastrous fire and explosion and giving a list of the cars for which recovery is sought here, as having been destroyed. In that letter he advised the de-defendant in error to file its ·claim with the freight claim agent of the plaintiff in error at Philadelphia, giving the name and address. Another letter was written by the same agent, addressed to the representative of the defendant in error, with respect to the wire and steel which also had been lost. The claim was subsequently filed, in accordance with the instructions in these letters, with the Philadelphia freight claim agent. It is now argued that, pursuant to the bill of lading, it was required to file the claim at the point of delivery or at the point at which the shipment originated. These letters estop the railroad company, because they misled the consignee. *Georgia, Florida & Alabama Railroad Co. v. Blish Milling Co.,* 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948. The carrier having reported the loss to the consignee, and instructed the filing of the claim with the Philadelphia general freight claim agent, the requirements of the terms of the bill of lading were fulfilled. The carrier had knowledge of the loss, and was advised by the owner that it asserted a claim for the loss within the prescribed four months' period of the bill of lading."

Aside from our conclusion that the carrier is estopped to deny liability, we are inclined to view that the lower court correctly held, on the facts of this case, that there was a substantial compliance with the requirement that a written claim be filed within nine months. The issue is a close one and there are authorities cited by the appellant which tend to support a contrary conclusion, although none of the cases

cited by either party seem to be precisely in point factually. The case of *Atlantic Coast Line Railway Co. v. Pioneer Products, Inc.,* 256 F. (2d) 431, 433 (5th Cir. 1958), strongly supports the position of the appellant-carrier and about the only fact which distinguishes the instant case is that here we have the element of estoppel. Appellant also strongly relies on *Northern Pacific Railway Co. v. Mackie,* 195 F. (2d) 641, 643 (9th Cir. 1952), wherein a shipper was denied recovery for failure to timely file a written claim. While that case is factually somewhat in point with the instant case, there are, we think, certain facts of distinction. The same is to some extent true of *Delphi Frosted Foods Corp. v. Illinois Central Railway Co.,* 188 F. (2d) 343, 345 (6th Cir. 1951) ; *Insurance Company of North America v. Newtowne Manufacturing Co.,* 187 F. (2d) 675 681 (1st Cir. 1951) ; and *B. A. Walterman Co. v. Pennsylvania Railroad Co.,* 295 F. (2d) 627, 628 (6th Cir. 1961), which are also relied upon by appellant.

There are other circuit decisions, which we deem more nearly in point factually with the instant case, in which there was not strict or literal compliance with the written claim requirement, but wherein recovery has been allowed, the courts holding, in effect, that in view of the particular circumstances of the cases, there was sufficient or substantial compliance with the written claim requirement. These include *Hopper Paper Co. v. Baltimore & Ohio Railroad Co.,* 178 F. (2d) 179 (7th Cir. 1949) ; *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad Co.,* 422 F. (2d) 462 (6th Cir. 1970) ; and *Loveless v. Universal Carloading & Distributing Co., Inc.,* 225 F. (2d) 637 (10th Cir. 1955).

Admittedly not all of the circuit decisions can be completely harmonized and we do not think that a review of the detailed facts of each of the cases in an effort to either harmonize or distinguish various circuit decisions would be here particularly helpful. We simply hold that under all of the facts and circumstances of this case,

when considered in their entirety, the bill of lading require-
ment of a written claim has been sufficiently complied with;
that there is no showing of any prejudice to the carrier and
that it should not under the circumstances be allowed to
shield itself from its legal liability for the failure of the ship-
per to literally and strictly comply with the requirement as
to a written claim.

The judgment of the court below is accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN,
JJ., concur.