95 F.3d 837
 96 Cal. Daily Op. Serv. 6714, 96 Daily Journal
D.A.R. 10,964
ELECTRO SOURCE, INC., a California corporation, Plaintiff-Appellant,
v.
UNITED PARCEL SERVICE, INC., an Ohio corporation, Defendant-Appellee.
 No. 94-56201.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 8, 1996.
Decided Sept. 9, 1996.
 
 Frank E. Merideth, Jr. and Thomas N. Fitzgibbon, Bryan Cave, Santa Monica, California, for plaintiff-appellant.
 Robert J. Borthwick and Gareth T. Evans, Gibson, Dunn & Crutcher, Los Angeles, California, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California, Robert M. Takasugi, District Judge, Presiding. D.C. No. CV-92-07511-RMT(TX).
 Before: BEEZER, BRUNETTI and JOHN T. NOONAN, Jr., Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Electro Source, Inc. ("ESI") brought an action under the Federal Bills of Lading Act ("FBLA"), 49 U.S.C.App. §§ 81-124,[1] alleging that United Parcel Service, Inc. ("UPS") misdelivered two international shipments of video games. After a jury trial, the district court granted judgment as a matter of law in favor of UPS. ESI appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.
 
 
 2
 * In July 1992, ESI received two orders from Importalavera, a company located in Spain, for video games and accessories. The orders were packaged into two shipments, one valued at approximately $35,000, and the other at $50,000. ESI contacted UPS to arrange for transportation of the shipments, and it prepared waybills for each shipment. On each waybill, ESI listed the name and address of Caja de Madrid, a bank located in Talavera, Spain, in a box titled "consignee."[2] At the bottom of that same box, ESI typed in "RE: IMPORTALAVERA."
 
 
 3
 UPS transported the two shipments to Caja de Madrid. On two different days, UPS agent drivers physically brought the shipments to the bank. Upon arrival, the drivers entered the bank to get instructions on where to deposit the shipments. In each case, the drivers spoke to unidentified bank employees who orally instructed the drivers that they could not unload the shipments at the bank and were instead to take the shipments to Importalavera. The drivers took the shipments to Importalavera and had the people who received the shipments sign forms acknowledging receipt. Importalavera has failed to pay for the video games shipped.
 
 
 4
 ESI brought suit against UPS claiming that UPS misdelivered the shipments to Importalavera. UPS responded by arguing that it delivered the shipments to Caja de Madrid as required. At the end of trial, but before the case was submitted to the jury, UPS moved for judgment as a matter of law. The district court granted the motion concluding that, under the authority of Pere Marquette Ry. Co. v. J.F. French & Co., 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391 (1921), the actions taken by the UPS drivers at Caja de Madrid constituted deliveries as a matter of law.
 
 II
 
 5
 We review de novo a district court's grant of judgment as a matter of law. Zamalloa v. Hart, 31 F.3d 911, 913 (9th Cir.1994). A judgment as a matter of law is "proper if the evidence permits only one reasonable conclusion as to the verdict." Shakey's Inc. v. Covalt, 704 F.2d 426, 430 (9th Cir.1983). We "must view the evidence as a whole and draw all possible inferences in favor of the non-moving party." Id. Reversal of a judgment as a matter of law is appropriate "if there is substantial evidence to support a finding for the non-moving party." Id.
 
 III
 
 6
 Under the FBLA, a carrier is justified in delivering goods to (1) a person lawfully entitled to those goods, (2) the consignee named in a straight bill of lading for the goods, or (3) a person in possession of an order bill of lading for the goods. 49 U.S.C.App. § 89. If the carrier delivers the goods to someone other than the persons listed above, the carrier has misdelivered the goods and is liable for them. 49 U.S.C.App. § 90.
 
 
 7
 The bills of lading at issue were straight bills of lading.[3] UPS was required to deliver the shipments to a person lawfully entitled to the possession of the goods or to the specified consignee. Importalavera, having not paid for the goods and not being listed as the consignee, was neither of these. Caja de Madrid was the consignee. Proper delivery could only have been made by delivering the shipments to Caja de Madrid.
 
 
 8
 UPS argues that based on Pere Marquette Ry. Co. v. J.F. French & Co., 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391 (1921), the shipments were delivered to Caja de Madrid as a matter of law. UPS argues that Pere Marquette stands for the proposition that when a carrier takes goods to a party to whom it is entitled to make delivery, and that party gives oral instructions to forward the shipment to another party, and the carrier complies, the carrier as a matter of law has delivered the goods to the first party. The district court agreed and determined that the actions taken by the UPS drivers at Caja de Madrid were deliveries to Caja de Madrid as a matter of law.
 
 
 9
 ESI argues that delivery is not always completed by an oral redirection and instead that what constitutes delivery depends on the intent of the parties to the bill of lading contract. We agree. Pere Marquette does not stand for the broad proposition suggested by UPS.
 
 
 10
 In Pere Marquette, the Supreme Court addressed the issue whether a carrier, Pere Marquette, was liable for misdelivery for turning over a railroad car of goods to a second carrier for further shipment without Pere Marquette requiring surrender of the order bill of lading.[4] Pere Marquette, pursuant to its contract with J.F. French, transported the car to Louisville, Kentucky. Once there, Pere Marquette was instructed by the holder of the order bill of lading to turn over the car to a second carrier for further carriage. The Supreme Court held that "[i]n turning over the car for this new shipment the railway made a disposal of it in assumed termination and discharge of its obligations, which was, in legal contemplation, a delivery." Id. at 543, 41 S.Ct. at 197.
 
 
 11
 Based on the "in legal contemplation" language used by the Supreme Court, UPS argues that an oral redirection is always, as a matter of law, a delivery. UPS reads Pere Marquette much too broadly. In Pere Marquette, the Court examined a bill of lading that declared "The surrender of this original bill of lading properly endorsed shall be required before delivery of the property." Id. at 542, 41 S.Ct. at 197. The Court interpreted this clause to mean that delivery was justified only if the bill of lading was surrendered. Therefore, the Court concluded there were two issues: (1) whether there was a delivery; and (2) whether it was justified. Id. at 542-43, 41 S.Ct. at 197-98. The Court quickly answered the first question before moving on to a lengthy discussion of the second. The Court held that "[h]aving brought the goods to the destination named in the bill of lading the carrier's only duty under its contract was to make a delivery at that place; and it could make that delivery by turning the goods over to another carrier for further carriage." Id. at 543, 41 S.Ct. at 197 (emphasis added).
 
 
 12
 ESI argues that under its contract with UPS, delivery required more than an oral redirection. In other words, ESI contends that unlike the contract at issue in Pere Marquette, its contract with UPS called for more than a generic delivery. As Pere Marquette recognized, what is controlling is the contract. In general, "delivery occurs when one party surrenders--and the other party accepts--possession, custody, and control of the goods involved." Tokio Marine & Fire Ins. Co. v. Amato Motors, Inc., 871 F.Supp. 1010, 1014 (N.D.Ill.1994). If the intent of the parties to the contract requires more, however, then delivery is not completed by a mere surrender and acceptance. Because delivery " 'must mean delivery as required by the contract' ... the intention of the parties defines its scope." Intech, Inc. v. Consolidated Freightways, Inc., 836 F.2d 672 (1st Cir.1987) (quoting Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 241 U.S. 190, 195, 36 S.Ct. 541, 543-44, 60 L.Ed. 948 (1916)).[5]
 
 
 13
 Because the intent of the parties controls the meaning of delivery, a judgment as a matter of law in favor of UPS would be appropriate if the evidence presented at trial reasonably permitted only the conclusion that the actions taken by the drivers constituted delivery as intended. ESI argues that a "bank release" was required before delivery was accomplished to Caja de Madrid. ESI claims that it was attempting to carry out a transaction known as a "documents against payment" transaction. In such a transaction, a shipper designates a bank as the consignee although the goods ultimately are to go to the bank's customer. When the goods arrive at the location designated, the bank is notified. If the customer has arranged for payment to the shipper, the bank endorses certain banking documents giving the carrier permission to deliver to the customer. If the customer does not arrange for payment, the bank does not issue a bank release. The carrier instead notifies the shipper that the goods have not been delivered.
 
 
 14
 UPS contends that it did not know ESI was attempting to carry out a documents against payment transaction. UPS introduced strong evidence to support this contention. ESI's Chief Executive Officer, Nader Mossanen, however, testified that UPS was told prior to the shipments that ESI was going to be engaging in documents against payment transactions. While it appears from the cold record that counsel for UPS successfully cast doubt on this testimony, the credibility of this witness is a question for the jury. A reasonable jury could believe Mossanen's testimony and conclude that delivery required a bank release. We reverse the district court's grant of judgment as a matter of law and remand.
 
 
 15
 REVERSED and REMANDED.
 
 
 
 [1]
 Sections 81 to 124 were repealed on July 5, 1994, but were in force on the date of the transaction at issue in this case
 
 
 [2]
 The consignee is the person named in the bill of lading to whom the goods are to be delivered. 49 U.S.C.App. § 122
 
 
 [3]
 A straight bill of lading is one in which the goods are consigned to a specific person. 49 U.S.C.App. § 82
 
 
 [4]
 An order bill of lading is a negotiable instrument which consigns goods to the order a person named in the bill. 49 U.S.C.App. § 83
 
 
 [5]
 UPS argues that Intech is distinguishable because it dealt with the meaning of delivery under the Carmack Amendment, 49 U.S.C. § 11707, and not under the FBLA. Such a distinction is not convincing. Section 11707 imposes liability on a carrier for loss or injury to property shipped pursuant to a bill of lading. Section 90 of the FBLA imposes liability on a carrier for misdelivery. Under both statutes, liability ceases upon delivery. Combined, the statutes impose liability on a carrier for goods shipped until the carrier has accomplished a proper delivery. What is required of the carrier to effectuate delivery does not differ based on the statute applicable. In both cases, the contract controls