[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2002
THOMAS K. KAHN
CLERK

No. 01-14463

D. C. Docket No. 01-00306 CV-N-W

FRANK H. SMITH,
HARRIETT C. SMITH,

Plaintiffs-Appellants,

versus

UNITED PARCEL SERVICE, (UPS),

Defendant,

PAMELA BURNETTE MARLOW,
UNITED PARCEL SERVICE, INC., (OHIO),
et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Alabama

**(July 11, 2002)**

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

DUBINA, Circuit Judge:

Frank and Harriett Smith (the "Smiths") appeal the district court's dismissal of their claims for fraud, negligence, wantonness, or willfulness, and outrage against the United Parcel Service ("UPS") and Pamela Burnett Marlow ("Marlow"), a UPS delivery person. The district court dismissed the Smiths' claims as preempted by the Carmack Amendment, 49 U.S.C. § 14706 (1994). We agree with the district court and hold that the Carmack Amendment preempts all of the Smiths' claims because the claims arise from conduct involving UPS's transportation and delivery services. Accordingly, we affirm the district court's dismissal of the Smiths' claims.

## I. BACKGROUND

A. Facts

October 21, 1998, marked the beginning of an acrimonious relationship between the Smiths and UPS. On that date, Frank Smith, who is legally blind, and his son waited for UPS to deliver a computer to the Smiths' home. UPS failed to deliver the computer, and instead left a note at the Smiths' house explaining that it had attempted delivery. The Smiths called the UPS office and demanded that UPS deliver the computer that day.

UPS made two additional trips to the Smiths' home to deliver the computer. On the first attempted delivery, Harriett Smith asked her husband and son to assist the driver, Marlow, with the boxes. While at the truck, the parties exchanged harsh words, and the Smiths' son called Marlow an unflattering and derogatory name. Marlow responded by attempting to pull down the truck door and not delivering the computer. Frank Smith blocked the door on its descent. Marlow screamed for help, asserted repeatedly that "these are terrible people," closed the door of her truck, and drove down the street where she parked for a period of time before leaving the area. Marlow promptly reported this altercation to the police, who investigated but arrested no one. Later that same evening, the local manager of the UPS office personally delivered the computer to the Smiths' residence.

Since the date of the altercation, UPS refuses to make regular deliveries to the Smiths' home. The Smiths allege that UPS continually promises to make deliveries to their home, but fails to keep those promises. Rather than regularly delivering packages to the Smiths' residence, UPS mails notices to the Smiths' home stating, "we are unable to complete delivery because: correct street number needed, not delivered." [R. Vol. 1 Tab 1.] UPS then places the Smiths' packages on "will call" at the local UPS office. Occasionally, if available, a driver other than Marlow, will deliver packages to the Smiths' house. The Smiths claim that all

3

of the packages that they have picked up at the UPS office have been addressed correctly. Because Frank Smith is legally blind, he is unable to read the UPS notices or drive to the UPS office to retrieve packages if his wife is out-of-town. As a result, UPS has returned some packages to the senders.

B. Procedural History

On April 27, 2000, the Smiths filed suit against UPS and Marlow in the Circuit Court of Tuscaloosa County, Alabama, for monetary damages and injunctive relief alleging claims for fraud, negligence, wantonness, or willfulness, and outrage. The Smiths also alleged claims of discrimination in violation of *Ala. Code* § 27-2-1, and claims for suppression and conspiracy. Both UPS and Marlow asserted a preemption defense under the Carmack Amendment to all of the Smiths' state law tort claims. On January 3, 2001, the Smiths amended their complaint, adding new defendants and new claims. UPS and Marlow removed the action in February of 2001 and subsequently filed a motion to dismiss, which the district court granted. The district court found that the Carmack Amendment preempted the Smiths' claims and dismissed the case with prejudice. The Smiths then perfected this appeal.[1]

---

[1] The Smiths appeal only the district court's dismissal of their fraud, negligence, wantonness, or willfulness, and outrage claims. We thus consider the other claims abandoned. *Baker v. Montgomery*, 811 F.2d 557, 558 n.1 (11th Cir. 1987).

## II.  ISSUE

Whether the Carmack Amendment, 49 U.S.C. § 14706 (1994), preempts the Smiths' state law claims for fraud, negligence, wantonness, or willfulness, and outrage based upon UPS's allegedly wrongful acts.

## III.  STANDARD OF REVIEW

This court reviews the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*, applying the same standard as the district court. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999).  This court must accept the allegations set forth in the complaint as true for the purposes of a motion to dismiss.  *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc).

## IV.  DISCUSSION

The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce.  *New York, New Haven, & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S. Ct. 986, 988, 97 L. Ed. 1500 (1953); *Adams Express Co. v. Croninger*, 226 U.S. 491, 506, 33 S. Ct. 148, 152, 57 L. Ed. 314 (1913).  To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods.  *Adams Express*, 226 U.S. at 505-06, 33 S. Ct. at 152 ("Almost every detail

5

of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."); *see North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996) (explaining that the Carmack Amendment "preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments").

The Smiths argue that their claims are separate and distinct from UPS's contract of carriage to deliver goods so that the Carmack Amendment's savings clause[2] excludes their claims from its preemptive effect. The savings clause of the Carmack Amendment preserves rights and remedies "not inconsistent with the rules and regulations prescribed by the provisions of this act." *Adams Express*, 226 U.S. at 507, 33 S. Ct. at 152. However, the Smiths' fraud and negligence, wantonness, or willfulness claims clearly relate to the delivery of goods.

The complaint alleges that UPS committed fraud by accepting shipments for delivery to the Smiths' home "knowing that they had no intention of fulfilling or attempting to deliver." [R. Vol. 1 Tab 1.] As for the negligence, wantonness, or willfulness claims, the Smiths allege that UPS "undertook a duty to deliver

---

[2] The savings clause states: "Except as otherwise provided in this part, the remedies provided under this part are in addition to the remedies existing under another law or common law." 49 U.S.C. § 15103 (1996).

packages to [them]" and breached that duty "in failing and refusing to make deliveries to [them]." [R. Vol. 1 Tab 1.] Carmack Amendment preemption embraces all of these claims because it embraces "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation. . . ." *Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196, 36 S. Ct. 541, 544, 60 L. Ed. 948 (1916); *see also Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S. Ct. 73, 74 81 L. Ed. 20 (1936) (applying Carmack Amendment preemption to a negligence claim for failure to deliver a film in a timely manner); *New York, Philadelphia & Norfold R.R. Co. v. Peninsula Produce Exch. of Md.*, 240 U.S. 34, 38, 36 S. Ct. 230, 232, 60 L. Ed. 511 (1916) (explaining that Carmack Amendment preemption is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination"); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir. 1993) (upholding Carmack Amendment preemption of various state law claims, including fraud, intentional infliction of emotional distress, and negligence, when a moving company failed to deliver household goods to a new home in time for Christmas); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706 (4th Cir. 1993) (concluding that because "the Carmack Amendment was intended by Congress to create a national uniform

policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment . . . . [a]llowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy"); *Underwriters at Lloyds of London v. North Am. Van. Lines*, 890 F.2d 1112, 1121 (10th Cir. 1989) (holding that the Carmack Amendment preempted state and common law remedies against common carriers); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1412 n.5, 1415 (7th Cir. 1987) (holding that the Carmack Amendment preempted a plaintiff's claims for negligence, breach of contract, conversion, intentional misrepresentation, negligent misrepresentation, and negligent infliction of emotional distress, where his goods were destroyed by a fire while in transit); *Bear MGC Cutlery Co. v. Estes Express Lines, Inc.*, 132 F. Supp. 2d 937, 947-48 (N.D. Ala. 2001) (finding Carmack Amendment preemption of alleged claims for negligence, wantonness, and outrage for failing to properly deliver goods).

The Smiths contend that UPS's misrepresentations that it would take different steps to insure delivery created a new relationship apart from the contract of carriage so that the Carmack Amendment preemption does not apply. However, this contention does not alter the fact that the Smiths base their fraud and negligence, wantonness, or willfulness claims on UPS's failure to provide them

with particular transportation and delivery services. Therefore, the Smiths' claims fall squarely within the preemption coverage of the Carmack Amendment. *See, e.g., Pietro Culotta Grapes, Ltd. v. Southern Pac. Transp. Co.*, 917 F. Supp. 713, 715-16 (E.D. Cal. 1996) (finding the Carmack Amendment preempted tort and contract claims arising from alleged pre-shipment misrepresentations concerning delivery deadlines); *United Van Lines, Inc. v. Shooster*, 860 F. Supp. 826, 828-29 (S.D. Fla. 1992) (finding that the Carmack Amendment preempted a claim based on an alleged fraudulent estimate made to induce a contract).

Likewise, the Smiths' outrage claim falls squarely within the preemption coverage of the Carmack Amendment because it too is based on the same conduct - UPS's failure to deliver packages to the Smiths' home. The Smiths argue that the Carmack Amendment does not preempt their outrage claim, but rather the savings clause protects this claim, because a claim for outrage remedies an injury to their person rather than to their goods. This court has not determined whether the savings clause of the Carmack Amendment protects some claims because they remedy damage to a person, rather than goods. Among the circuits to visit this issue, the Fifth and Seventh Circuits have reached contrary conclusions.

In *Moffit v. Bekins Van Lines Co.*, the Fifth Circuit held that the Carmack Amendment preempted all state law claims, including ones for intentional

9

infliction of emotional distress and negligent infliction of emotional distress, when a moving company failed to deliver a family's belongings in time for Christmas. 6 F.3d 305, 307 (5th Cir. 1993). The Fifth Circuit reasoned that to hold otherwise would defeat the Carmack Amendment's goal of uniformity. *Id.* The Seventh Circuit, on the other hand, held that the Carmack Amendment did not preempt a claim for intentional infliction of emotional distress. *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 286 (7th Cir. 1997).

In *Gordon*, the plaintiff sued her carrier after it failed to deliver, and ultimately destroyed, several heirlooms during her relocation. 130 F.3d at 284. The plaintiff asserted several grounds of relief for the destruction of her property, including fraud, breach of contract, and willful and wanton conduct. *Id.* The Seventh Circuit held that the Carmack Amendment preempted all of those claims because those claims were essentially based on "the contract of carriage, in which the harm arises out of the loss of or damage to goods." *Id.* at 284, 289 (citing *Hughes*, 829 F.2d at 1407. However, the Seventh Circuit held that the plaintiff's claim for intentional infliction of emotional distress survived Carmack Amendment preemption. *Id.* at 289; *But see Hughes,* 829 F.2d at 1410, 1412 n.5 (holding that the Carmack Amendment preempted state common law remedies, including negligent infliction of emotional distress). The Seventh Circuit, relying heavily on

10

dicta from a First Circuit decision,[3] reasoned that "a number of situations" may exist "in which a carrier might remain liable to a shipper for certain kinds of separate and independently actionable harms that are distinct from the loss of, or the damage to the goods." *Id.* at 289 (citing *Pinkerton*, 89 F.3d at 458).

While we agree that situations may exist in which the Carmack Amendment does not preempt all state and common law claims, including ones for outrage, only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 383 (5th Cir. 1998) (acknowledging that the Carmack Amendment would not preempt claims "separate and apart from those resulting directly from the loss of shipped property," but holding that the Carmack Amendment preempted claims seeking damages for intentional infliction of emotional distress as well as punitive damages as a result of egregious conduct by a carrier in the course of discharging its duties); *see also Gooch v. Oregon Short Line R.R. Co.*, 258 U.S. 22, 42 S. Ct. 192, 66 L. Ed. 443 (1922) (explaining that the

---

[3] The Seventh Circuit decision in *Gordon v. United Van Lines, Inc.* relies in part on *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997), in which the First Circuit indicated in dicta that "a claim for intentional infliction of emotional distress alleges a harm to the shipper that is independent from the loss or damage to goods and, as such, would not be preempted." 104 F.3d at 506. The First Circuit further stated that if a plaintiff, who had several items disappear during a move, had proven her claim for intentional infliction of emotional distress at trial that the Carmack Amendment would not have preempted that claim. *Id.*

11

Carmack Amendment did not preempt an action involving a physical injury to a caretaker accompanying an interstate shipment of cattle); *Chicago, Rock Island & Pac. Ry. Co. v. Maucher*, 248 U.S. 359, 39 S. Ct. 108, 63 L. Ed. 294 (1919) (holding that the Carmack Amendment did not preempt a claim by a plaintiff who was physically injured); *Reeves v. Mayflower Transit, Inc.*, 87 F. Supp. 2d 1251, 1252, 1254 (M.D. Ala. 1999) (finding that the Carmack Amendment preempted an intentional infliction of emotional distress claim arising from the alleged failure of a carrier to perform the service of packing, shipping, and delivering goods as contracted). In other words, separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment.

The Smiths allege outrage in that the "actions of [UPS] to deny deliveries to [them] have been intentional and have been designed to inflict emotional distress." [R. Vol. 1 Tab 1.] Although the Smiths seek a remedy for an injury to their person, the claim results solely from the loss of and misdelivery of their goods. Therefore, the Smiths' outrage claim is embraced by the preemptive effect of the Carmack Amendment.

The Smiths argue that while the controversy involves packages, no doubt exists that if a UPS driver intentionally assaulted and injured them, the Carmack Amendment would not preempt their cause of action. We agree. However, the

12

Smiths argue further that their claims under these facts are indistinguishable.  To the contrary, we conclude that their claims are vastly different.  Their claims of fraud, negligence, wantonness, or willfulness, and outrage all arise from UPS's failure to deliver their packages.  The Smiths allege no conduct separate and distinct from  UPS's failure to transport and deliver packages.  Therefore, the Carmack Amendment preempts the Smiths' state law tort claims.

## V.  CONCLUSION

The Supreme Court of the United States has described the preemptive effect of the Carmack Amendment very broadly.  *Blish Milling Co.*, 241 U.S. at 196, 36 S. Ct. at 544.  The Carmack Amendment embraces "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation."  *Id.* Because the Smiths base all of their claims on allegations concerning UPS's failure to provide them with transportation and delivery services, the Carmack Amendment preempts their claims.  Accordingly, we affirm the district court's judgment of dismissal.

**AFFIRMED**.