Robert **GENDLER** and Yorkys Ramirez, Plaintiffs,

v.

**ALL PRO VAN LINES, INC., Defendant.**

**No. CV 04–251 TUC DCB.**

United States District Court, D. Arizona.

Sept. 27, 2005.

Edward W. Matchett, Matchett Law, Bisbee, AZ, for Plaintiffs.

Jeffrey R. Simmons, Ryley Carlock & Applewhite PA, Phoenix, AZ, for Defendant.

## ORDER

BURY, District Judge.

Pending before this Court is Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's motion is granted.[1]

## I. INTRODUCTION

Defendant is and was an interstate motor carrier of household goods and personal property (a.k.a., a moving company), and operates under the authority of the Federal Motor Carrier Safety Administration of the United States Department of Transportation. In January of 2004, Plaintiffs contracted with Defendant for the shipment of Plaintiffs' household goods and personal property from Florida to Arizona.

On January 22, 2004, Plaintiff Robert Gendler signed a "Florida Estimated Cost of Services," which estimated that the total cost of Defendant's services would be $1,472.69. (Defendant's Exhibit 4) In a section with the admonishment, "PLEASE READ CAREFULLY," the estimate explained, "The total cost of your move cannot exceed the amount of the written estimate." (*Id.*) However, in a later section entitled "Important Notice," the estimate further explained,

In order for the estimate to be accurate, you must disclose all information relevant to the move. In the event of unforeseen circumstances, including but not limited to the decision to add items or remove items on the day of the move, ... additional charges may be incurred that were not incorporated within this estimate. An Addendum to this estimate will be presented at the time any such circumstances arise.

(*Id.*)

On January 30, 2004, Plaintiff Yorkys Ramirez signed a "Uniform Household Goods Bill of Lading and Freight Bill." (Defendant's Exhibit 2)[2] Immediately

---

1. Defendant's Motion is granted without oral argument. While Defendant requested oral argument, Plaintiffs did not. In the Ninth Circuit, a district court deciding a motion for summary judgment may not deny a request for oral argument, but only "when made by a party opposing the motion ...." *Dredge Corp. v. Penny,* 338 F.2d 456, 462 (9th Cir.1964). Inasmuch as Plaintiffs, the parties opposing the motion for summary judgment, declined to request oral argument, "oral argument [was] deemed to have been waived." *Id.* at 461–62.

2. In her affidavit, Plaintiff Ramirez claims she "did not receive a copy of the Bill of Lading at the time of the move but finally received a copy only of the front of the document after litigation was filed." (Affidavit of Yorkys Ramirez at ¶ 4) That claim by Plaintiff Ramirez is directly contradicted by the "Bill of Lading," dated January 30, 2004, which bears her signature.

above the space on the "Bill of Lading" where Plaintiff Ramirez filled in her name and Florida address, was the following statement: "Received, subject to classifications, tariffs, rules and regulations including all terms printed or stamped hereon or on the reverse side hereof in effect on the date of issue of this bill of lading." (*Id.*) On the reverse side of the "Bill of Lading," were set forth the "Contract Terms and Conditions." (*Id.*) Section 4 of the "Contract Terms and Conditions," provides,

> If for any reason other than the fault of the carrier, delivery cannot be made ..., carrier, at its option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery or at other available points, at the cost of the owner, and subject to a lien for all accrued tariff charges.

(*Id.*)

At the bottom of the "Bill of Lading," in a section entitled "Customer's Declaration of Value," Plaintiff Ramirez affixed her signature, acknowledging, *inter alia,* that she had "received a copy of the mover's brochure explaining these provisions and the applicable charges." (*Id.*) The "Bill of Lading," signed by Plaintiff Ramirez on January 30, 2004, indicated a total balance due of $7,092.91. (*Id.*)

The total balance due reflected the "Amendment to the Order for Service," signed by Plaintiff Ramirez on January 30, 2004. (Defendant's Exhibit 6) The "Amendment" was necessary because on the day of the move, Plaintiffs presented additional household goods that were not identified and not included in the estimate of January 22, 2004. (DSOF 16) The "Amendment" provided, in part, "Shipper agrees to amend the Order for Service and assents to a revised estimate of charges (if any) to provide for the following described changes." (Defendant's Exhibit 6) By signing the "Amendment," Plaintiff Ra-

mirez agreed to additional weight and packing services totaling an estimated $7,700.00. (*Id.*)

On or about February 24, 2004, Defendant attempted to deliver Plaintiffs' property at the destination in Pearce, Arizona. (PSOF 9; DSOF 17) Plaintiffs, however, believing they were bound only by the original estimate of January 22, 2004, refused to pay Defendant the amount of $7,092.91. (PSOF 9; DSOF 18) As a result, and pursuant to Section 4 of the "Contract Terms and Conditions" on the reverse side of the "Bill of Lading," Defendant held Plaintiffs' property and stored it in a warehouse of its choice. (PSOF 9)

On or about July 11, 2004, upon receipt of payment in the amount of $1,619.96 from Plaintiffs, Defendant delivered Plaintiffs' property to their home in Pearce, Arizona. (PSOF 9; Defendant's Exhibit 14) Defendant made the delivery without waiving any of its claims or defenses. (Defendant's Exhibit 14)

Plaintiffs filed suit in Cochise County Superior Court alleging Intentional Infliction of Emotional Distress, Fraudulent Misrepresentation, Racketeering, and Tortious Interference with a Business. On May 13, 2004, Defendant removed Plaintiffs' suit to this Court pursuant to the Interstate Commerce Act.

Defendant moved for summary judgment on July 22, 2005. At the heart of Defendant's motion is the argument that Plaintiffs' claims, arising as they do under state law, are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.

## II. DISCUSSION

### A. Standard for Motions for Summary Judgment

A motion for summary judgment shall be granted if there are no genuine issues

of material fact, entitling the moving party to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment should be granted if reasonable minds could not differ that the moving party must prevail as a matter of law. *Id.* at 250–51, 106 S.Ct. 2505. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party, however, is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. See *id.* at 325, 106 S.Ct. 2548. Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. See *id.*

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (*quoting* Rule 56(e), Fed.R.Civ.P.). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

The party opposing a motion for summary judgment may not rest upon its pleadings, but must set forth specific facts which indicate that there is a genuine issue for trial. *Id.* at 250, 106 S.Ct. 2505; Rule 56(e), Fed.R.Civ.P. The party with the burden of proof at trial also bears that same burden when making or opposing a motion for summary judgment. *Celotex,*

477 U.S. at 322, 106 S.Ct. 2548. In other words, "[t]he party moving for summary judgment must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary." *Lockwood v. Wolf Corporation,* 629 F.2d 603, 611 (9th Cir.1980). Mere allegations, however, unsupported by further information, are insufficient to support a motion for summary judgment. *Brandwein v. California Board of Osteopathic Examiners,* 708 F.2d 1466, 1474 (9th Cir.1983).

Motions for summary judgment should be viewed "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted). Accordingly, the rules governing motions for summary judgment should be enforced with regard not just for the rights of the nonmovant, but also for the rights of the party contending that there exists no genuine issue of material fact. *Id.*

## B. Preemption

The Carmack Amendment to the Interstate Commerce Act was enacted by Congress in 1906 in order to establish uniform laws regarding the liability of interstate carriers for loss and damage to goods shipped pursuant to interstate bills of lading. *Coughlin v. United Van Lines, LLC,* 362 F.Supp.2d 1166, 1167 (C.D.Cal.2005). The Amendment provides in relevant part:

A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this

paragraph is for *the actual loss or injury to the property.*

49 U.S.C. § 14706(a)(1) (emphasis added).

Shortly after the Amendment's enactment, the Supreme Court defined the scope of the Amendment's preemption.

> Almost every detail of the subject [interstate common carriers] is covered so completely that there can be no rational doubt but that congress intended to take possession of the subject, and supercede *all* state regulations with reference to it
> . . . .

*Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06, 33 S.Ct. 148, 57 L.Ed. 314 (1913) (emphasis added).

■ Thus, in *Adams Express*, the Supreme Court "held that claims arising out of loss or damage to property transported in interstate commerce are governed by the Carmack Amendment and that *all* state law and common law claims are preempted." *Coughlin*, 362 F.Supp.2d at 1168 (emphasis original).

Subsequently, in *Georgia, Florida and Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916), the Supreme Court reaffirmed its holding in *Adams Express*. In *Blish Milling*, the Supreme Court held that the Carmack Amendment is "comprehensive enough to embrace responsibility for *all losses* resulting from *any* failure to discharge a carrier's duty as to *any part* of the agreed transportation . . . ." *Id.* at 196, 36 S.Ct. 541. Likewise, in *Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137 (1915), the Supreme Court held that Carmack's preemption applies not simply to state claims which directly contradict the procedures or remedies set forth in Carmack, but that preemption also applies to state causes of action which supplement Carmack.

■ In the present case, all of Plaintiffs' claims are causes of action under Arizona statutory and common law. All of Plaintiff's claims stem from and arise out of Defendant's refusal to deliver Plaintiffs' property after transporting the property through interstate commerce. In Plaintiffs' own words, Plaintiffs claims "originated because of the failure and refusal of the Defendant motor carrier to deliver their property to their Pearce, Arizona home . . . on February 25, 2004." (Plaintiffs' Response at 2) Thus, it is undisputed that Plaintiffs' seek to "recover for damages allegedly sustained incident to the interstate shipment of [their] goods." *Coughlin*, 362 F.Supp.2d at 1169. Accordingly, all of Plaintiffs' claims are preempted by the Carmack Amendment. *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306–07 (5th Cir.1993) (Carmack preempted all state law claims, including intentional and negligent infliction of emotional distress, misrepresentation, fraud, and breach of contract); *Smith v. United Parcel Service*, 296 F.3d 1244, 1249 (11th Cir.2002) (Carmack preempted state law claims of fraud, negligence, wantonness, willfulness, and outrage); *Pietro Culotta Grapes, Ltd. v. Southern Pacific Transportation Company*, 917 F.Supp. 713, 716 (E.D.Cal.1996) (Carmack preempted state law claims of breach of contract, negligence, fraud, negligent misrepresentation, and interference with economic advantage); *Hanlon v. United Parcel Service*, 132 F.Supp.2d 503, 505–06 (N.D.Texas 2001) (Carmack preempted state law claims, including breach of contract, bad faith, emotional distress, and mental anguish); *Coughlin*, 362 F.Supp.2d at 1169–70 (Carmack preempted state law claims of breach of contract and negligence); *see also Arnell v. Mayflower Transit, Inc.*, 968 F.Supp. 521 (D.Nev.1997); and *NYK Line v. Burlington Northern and Santa Fe Ry., Co.*, 222 F.Supp.2d 1176 (C.D.Cal.2002).

Nevertheless, Plaintiffs argue that Carmack does not preempt any of their state claims because Defendant allegedly failed to provide them with a bill of lading as required by statute. Plaintiffs' argument fails for two distinct reasons. First, "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." 49 U.S.C. 14706(a)(1). Therefore, even if Defendant failed to provide Plaintiffs with a bill of lading, any such failure would not affect Defendant's liability under the Carmack Amendment.

Second, Plaintiffs' affidavit to the contrary notwithstanding, Defendant did in fact provide them with a bill of lading. Indeed, the "Bill of Lading" bears Plaintiff Ramirez' signature. Plaintiffs do not challenge the validity or authenticity of Plaintiff Ramirez' signature on the "Bill of Lading," nor do they deny that Plaintiff Ramirez signed the Bill of Lading on January 30, 2004. It is axiomatic that one cannot sign a document without first being provided with the document. Therefore, Plaintiffs' statements in their affidavits that they were never presented with a bill of lading are mere conclusory allegations that are not and cannot be supported by the undisputed facts in the record. *See Angel v. Seattle–First National Bank,* 653 F.2d 1293, 1299 (9th Cir.1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data").

Plaintiffs also claim that Carmack does not preempt their claim for Intentional Emotional Distress. Plaintiffs make no arguments specific to their particular claim or to the facts of this case in support of their position. Rather, Plaintiffs merely provide a block quote from a Seventh Circuit decision, *Gordon v. United Van Lines, Inc.,* 130 F.3d 282 (7th Cir.1997). In *Gordon,* the Seventh Circuit, without analysis or explanation, and based exclusively upon dicta from *Rini v. United Van Lines, Inc.,* 104 F.3d 502, 506 (1st Cir.1997), held that a state law claim for intentional infliction of emotional distress was not preempted by the Carmack Amendment. *Gordon,* 130 F.3d at 289.

Not only is *Gordon*'s holding based entirely upon another court's hypothesized dicta, it is contrary to the congressional intent underlying Carmack, as well as an anomaly of federal jurisprudence regarding the Carmack Amendment's preemption. This Court is far more persuaded by the better reasoned decisions of the Eleventh Circuit in *Smith, supra,* and the Fifth Circuit in *Moffit, supra.*

In *Smith,* the plaintiffs also pointed to the *Gordon* decision as supporting their argument that Carmack did not preempt their state law claim of intentional infliction of emotional distress. *Smith,* 296 F.3d at 1249. In rejecting that argument, the court in *Smith* noted that "separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment." *Id.* In *Smith,* however, as in the present case, the plaintiffs' claim for emotional distress resulted "solely from the loss of and misdelivery of their goods." *Id.* As here, the plaintiffs in *Smith* "allege[d] no conduct separate and distinct from [the carrier's] failure to transport and delivery packages." *Id.* Thus, the plaintiffs' claim of emotional distress was preempted by Carmack. *Id.*

In *Moffit,* the court also concluded that all of the plaintiffs' state law claims, including claims for intentional and negligent infliction of emotional distress, were preempted by the Carmack Amendment. *Moffit,* 6 F.3d at 307. The court in *Moffit* determined that to hold otherwise "could only lead to the morass that existed before the Carmack Amendment[,]" and "would only defeat the purpose of the statute,

which was to create uniformity out of disparity." *Id.*

In sum, all of Plaintiffs' state law claims are preempted by the Carmack Amendment, entitling Defendant to summary judgment.

**Accordingly,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (document 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment and close this case.